STATE of Missouri, Respondent,

v.

John David BROWN, Appellant.

John David BROWN, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 42647, WD 47145.

Missouri Court of Appeals,
Western District.

Oct. 5, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 30, 1993.

Application to Transfer Denied
Jan. 25, 1994.

David S. Durbin, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J., and BERREY and SMART, JJ.

BERREY, Judge.

Appellant appeals his conviction of first degree murder and sentence of life imprisonment without parole. Appellant also appeals the denial of his Rule 29.15 post conviction motion. We consolidate both appeals herein.

The appellant was an escapee from Fordland Missouri Correctional Center, where he was serving time for burglary. He escaped on June 1, 1984. On July 9, 1984, several guns were stolen in a burglary from Shoppers World in Osage Beach, Missouri owned by Richard Brown. The next day, Richard Brown was robbed. At the time of the robbery, the robber was armed with a "stainless steel revolver." The weapon looked similar to Mr. Brown's Ruger .357 "Security 6" that had been taken in the burglary from his store on July 9, 1984. Brown also had 3 long guns and a camouflage outfit stolen from his trailer home on July 9. The robber wore camouflage clothing that was similar to the outfit stolen on July 9. The robber also wore black plastic rimmed glasses and demanded money from Brown. The robber took Brown's "wallet" which contained Brown's driver's license, money and credit cards. Brown positively identified appellant in court as the person who robbed him on July 10, 1984. Brown further testified that during the robbery he asked appellant "if that is one

of the pistols that he stole the other night." Brown stated appellant did not reply but looked to be smiling.

On March 28, 1987, appellant checked into the Howard Johnson Motel in Rolla, Missouri under the name of Bill Swentz. He was driving a stolen pick up with stolen license plates. The Rolla police investigated the stolen pick up and went to room 147 on March 29. In response to their knock they heard appellant say "just a minute." This room had two exits one opening into a hall corridor and the other into a balcony. Subsequent to the knock, appellant exited to the balcony, saw Officer James Horn of the Rolla Police Department standing in the parking lot, shot him with a 30-30 rifle and escaped.

On April 1, 1987, Claude Long, a member of the New Apostolic Church in rural Phelps County was shot and killed as he was making preparations for Wednesday evening services. The bullet that killed Mr. Long was later identified by ballistic experts as having been fired from the .357 hand gun taken from appellant when he was arrested in the stairwell of a motel in Ada, Oklahoma on May 27, 1987. In addition to removing the .357 stainless steel revolver from his waist band the police also seized from Brown a wallet which contained the driver's license of Robert Lee Leiblie. Appellant had $4,510 cash in the wallet, cartridges and miscellaneous cash in his pants pocket.

The appellant raises numerous points of "trial" court error, some of which are properly assigned to the "motion" court and will thus be addressed. Points of error alleged are 1) the trial court erred in admitting substantial evidence of other crimes over objection of appellant; 2) the trial court erred in admitting over objection the copper bullet that killed Claude Long because there was no foundation as to proper chain of custody; 3) the trial court erred in submitting the case to the jury and in overruling appellant's motion for new trial as there was insufficient evidence to show appellant deliberated on the killing of Mr. Long; 4) the trial court erred in overruling appellant's challenge for cause to venireman 65, Roger Smith because Smith indicated the appellant should produce evidence of his innocence; 5) the motion court

erred by overruling appellant's motion for post conviction relief because his counsel was ineffective in (a) failing to preserve the motion to support identification of appellant by deputy sheriff Horn, (b) failing to preserve the motion to suppress evidence seized in the motel room occupied by appellant and (c) failing to preserve the motion to suppress the evidence seized from the pick up truck driven by appellant; 6) the motion court erred in overruling appellant's post conviction relief due to ineffective assistance of counsel because appellant's counsel adopted a theory that Mr. Long was inadvertently shot by police looking for appellant; and 7) the trial court erred by following procedure set forth in § 494.505 RSMo.1992 pertaining to venue as such statute was enacted subsequent to the commission of the alleged offense.

■  For Point I, the appellant relies on *State v. Bernard*, 849 S.W.2d 10 (Mo. banc 1993) as grounds for reversal. *Bernard* stands for the general principle that evidence of prior uncharged misconduct is not admissible to show the defendant's propensity to commit crimes. *Id.* at 13. However, such evidence is admissible if it is logically relevant, that it has a legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial and it is legally relevant, in that its probative value outweighs its prejudicial effect. *Id.* at 13. *State v. Mallett*, 732 S.W.2d 527, 534 (Mo. banc) *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). The decision to admit such evidence rests in the sound discretion of the trial court after it has balanced the effect and value of the evidence sought to be introduced.

■  The prosecution introduced evidence of the defendant's uncharged misconduct. Robert Leiblie testified that appellant robbed him at gun point on July 22, 1986, and stole his wallet containing his driver's license, social security card, credit cards and $400–440 in cash. The appellant also robbed the store safe where Lieblie was working. Lieblie testified that the robber was dressed in camouflage clothing including a camouflage cap but with a hard bill. Lieblie identified appellant in court as the man who robbed him. He also identified his driver's license and his

billfold which was found on the appellant when appellant was arrested in Ada, Oklahoma. Lieblie also identified the hat which police recovered from the pick up truck parked at the Howard Johnson Motel in Rolla, Missouri as being the hat appellant was wearing when Lieblie was robbed. Lieblie identified his address on the registration card from the Raintree Inn at Ada which appellant had written when he checked into the motel. Lieblie testified that the gun appellant used to rob him was a revolver, and he could see cartridges in the cylinders.

Sgt. Robert North of the Missouri Highway Patrol testified that on March 29, 1987, pursuant to a search warrant, he searched a green pick up found in the parking lot at Howard Johnson in Rolla. He found a binocular case in the truck and the binoculars in Room 147. The binoculars and case had been taken in the burglary from Shoppers Watch World along with the fire arms on July 9, 1984. Also seized during the search of the pick up truck was an assortment of ammunition including 30.30 rifle cartridges that matched the spent 30.30 cartridge case found on the porch outside room 147 after Officer Horn was shot. The live 30.30 shells were copper jacketed. The spent bullet retrieved from under the pick up was a 30.30 copper jacketed slug. Other ammunition found were .22 rifle cartridges, 12 gauge shotgun shells, 12 gauge rifle slugs, ".357 magnum super ww, game brand" ammunition, .223 remmington ammo, and .38 special ammo.

Evidence more directly related to the murder for which Brown was charged, which included items found near the scene of the crime, was introduced at trial. After the body of Mr. Long was recovered, an extensive man hunt took place. During this exercise, a camp site was located near the location where Mr. Long was shot. Located in the camp site was a tool box containing a telescope which had appellant's fingerprints on it. The tool box contained a .22 caliber rifle. The tool box had been buried. Also located at the camp site was a Ruger .223 caliber rifle and a Remmington 30.06 rifle. A number of other pistols were recovered at the camp site along with ammunition and a knife. Several of the weapons had been stolen in the burglary of the Shoppers World in Osage Beach. The evidence related to "other crimes" was inseparably tied to the evidence necessary to establish appellant's guilt of murdering Claude Long. Because the evidence of Brown's guilt was circumstantial, evidence that Brown acquired and possessed the murder weapon before and after the crime was essential to prove Brown's guilt. The prosecution sought to establish appellant's possession of the murder weapon both *before* and *after* the murder, and to establish his state of mind as an escapee seeking to avoid capture, the motive for his crime.

■ Generally, evidence of other uncharged bad acts may be received if it tends to establish motive, intent, absence of mistake or accident, the identity of the person charged with the crime, or a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish proof of the other. *Id.* However, even evidence that does not fall within one of the five enumerated exceptions may be admissible if the evidence is logically and legally relevant. *Id.* The evidence of Brown's prior uncharged bad acts tended to establish the identity of the murderer and the motive for the crime. The evidence was logically relevant because it tended to establish directly that Brown murdered Mr. Long to prevent Mr. Long from informing authorities where he was. Without the logical, sequential presentation of the evidence of Brown's acquisition of the murder weapon, his identification with the weapon after the burglary by the weapons owner (the robbery) and Brown's possession of the weapon when he was arrested, the state would not have been able to establish sufficient evidence to identify Brown as the murderer. Evidence of Brown's escape from the motel in Rolla and his shooting officer Horn demonstrated Brown's determination not to be caught and his motive for murdering Mr. Long. It also was logically relevant to the issue of whether Brown deliberated before shooting Mr. Long.

The evidence of Brown's uncharged prior misconduct was logically and legally relevant.

Appellant's Point I is denied.

■ Appellant next alleges that a proper chain of custody was not established to sufficiently prove the bullet which killed Mr. Long was in the same condition when tested that it was in when removed from the crime scene. A copper jacketed bullet was removed by Trooper Bob Ashurst from under a table at the scene where Claude Long was shot and killed.

Ashurst testified he placed the bullet in a container and delivered it to August Nilges at the Missouri Highway Patrol lab and that he did not in any way alter or deface the bullet. Nilges testified he gave the bullet to Tom Buel of the Patrol Lab and Buel conducted the comparison tests. Buel testified he did not alter the bullet but did put his initials on the evidence. Buel transmitted the bullet to James Neal for further testing and observed Neal examine the bullet.

Ashurst gave the bullet to Nilges on April 2, 1987. From Nilges, the bullet went to Buel, also on April 2, 1987. From April 2, 1987 to June 17, 1987 the bullet was in the State Patrol Lab under Buel's control. Buel initialed it and gave it to Trooper Tucker on June 17, 1987. On June 17, 1987, Tucker had both the bullet and pistol in his possession. John O'Neil, a Bureau of Alcohol, Tobacco and Firearms agent also examined the bullet and initialed it. Robert Monument, with the state patrol also examined the bullet and initialed it.

■ The admission of demonstrative evidence is in the trial court's discretion. *State v. Huff,* 789 S.W.2d 71, 78 (Mo.App.1990). The testimony was that the bullet found at the scene was in substantially the same condition when examined as when it was found. Even though every officer who handled the bullet did not initial it, it was a subject for cross examination and for the jury to assess weight to the evidence. Ashurst positively identified the bullet as the one he found ·under the table in the church near Mr. Long's body. *State v. Malone,* 694 S.W.2d 723, 727 (Mo. banc 1985). Since there is no evidence to the contrary the court may assume that the officers in control of the evidence properly discharged their duties and did not tamper with the evidence. *State v. Taylor,* 804 S.W.2d 59, 61 (Mo.App.1991).

The court did not abuse its discretion in receiving the bullet into evidence as there was no evidence which suggested the bullet had been altered.

Appellant's point II is denied.

■ Next appellant alleges that the trial court erred in submitting the case to the jury over his motion for a judgment of acquittal and in overruling appellant's motion for a new trial because the evidence was insufficient to prove deliberation. Deliberation separates first from second degree murder. *State v. Powell,* 728 S.W.2d 622, 624 (Mo.App.1987). It is necessary to find deliberation to support the conviction of first degree murder. *State v. Antwine,* 743 S.W.2d 51, 72 (Mo. banc 1987). "Deliberation is found when an act of killing is performed with a cool, deliberate state of mind." *State v. Reed,* 816 S.W.2d 919, 923 (Mo.App.1991).

This court reviews the evidence in the light most favorable to the verdict and disregards contrary evidence and inferences. *State v. Roberts,* 709 S.W.2d 857, 861 (Mo. banc) *cert. denied,* 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986). This court does not weigh the evidence, rather we determine if the evidence was sufficient for reasonable persons to have found appellant guilty. *State v. Bradshaw,* 779 S.W.2d 617, 620 (Mo. App.1989). Nothing in the record indicates appellant's conduct was brought on by sudden anger or passion. Mr. Long was shot in the head as he stood by the water fountain. The shot was not fired from close range.

■ Appellant was trying to escape capture for wounding a police officer when Claude Long was shot. Appellant demonstrated by his conduct in shooting officer Horn that he was determined to avoid capture and that he was motivated to murder Mr. Long to prevent Mr. Long from informing law enforcement officers of appellant's location. Apellant had no apparent reason to kill Mr. Long, except to prevent Mr. Long from informing law enforcement officers of his location. When viewed in the light most favorable to the verdict, the evidence is sufficient to establish deliberation. Deliberation may be found from the facts surrounding the murder. *State v. LaRette,* 648 S.W.2d 96,

102 (Mo. banc 1983). The jury could reasonably infer that appellant deliberately killed Mr. Long to silence him so that appellant could avoid capture.

Point III is denied.

◼ For Point IV, appellant claims the trial court erred in overruling his challenge against venireman Roger Smith because Mr. Smith was inattentive and believed that the defendant should present evidence. Smith also stated during voir dire that he is sometimes bored and that he would sometimes day dream.

◼ Determining whether to excuse a juror for cause is discretionary with the trial court, and absent an abuse of discretion the trial court's decision will not be disturbed on appeal. *State v. O'Neal,* 718 S.W.2d 498, 502 (Mo. banc 1986). Mr. Smith's statement during voir dire that he sometimes gets bored and then tends to day dream, by itself, is not sufficient to conclude that the trial court abused its discretion by refusing to strike him for cause. The record does not support a finding that Mr. Smith would not pay attention had he been selected as a juror. Mr. Smith was stricken peremptorily and was not selected for jury service. A juror is not the judge of his qualifications. *State v. Roseman,* 583 S.W.2d 232, 234 (Mo.App.1979).

Appellant's point IV is denied.

◼ Points V, VI and VII of appellant's brief address the "trial court's" error because the court overruled appellant's post conviction motion regarding ineffective assistance of counsel. Appellant alleges his counsel failed to "preserve the motion to suppress the identification of appellant by Deputy James (Jay) Horn," failed to "preserve the motion to suppress the evidence seized in the motel room occupied by appellant," and failed "to properly preserve the motion to suppress the evidence seized in the pick up truck driven by appellant." We will address them as one point.

Deputy Horn identified the appellant in court and also identified appellant's photograph in a photo array, Exhibit 31, that was shown to him while he was in the hospital after having been shot by appellant. Following his in-court identification, the state moved to admit Exhibit 31. After appellant's attorney stated he had no objection to the introduction of Exhibit 31, the court admitted the exhibit.

◼ The movant bears a heavy duty in attempting to establish ineffective assistance of counsel. *Smith v. State,* 714 S.W.2d 834, 836 (Mo.App.1986). The movant must demonstrate his counsel's performance was deficient and that this deficiency in performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Over 4,500 pages of transcript have been reviewed, and it is clear that movant's counsel performed in a highly professional manner and offered a skilled defense for movant. Movant testified at sentencing that his counsel had not been ineffective or incompetent. The trial court observed that "clients and attorneys don't always get along on what's in their best interest regarding trial strategy." The trial court then asked appellant at the sentencing hearing if "there was ... anything that they did that you didn't want them to do?" to which appellant responded, "No, sir."

The trial attorney stated during the 29.15 hearing that he did not view identification as an issue in the case in chief. Appellant's trial counsel stated "... I didn't think that it was ... for purposes of the trial in a murder case good, sound policy to attack the identification of the person originally who shot Mr. Horn, because that was not an issue that was denied by Mr. Brown, ..." "and I thought that, you know, if we attack every little thing that we should have been conceding that the jury was going to get the wrong impression about things that we thought were important later on."

◼ This court will not second guess the trial counsel regarding his trial strategy, tactics, or decisions. *Green v. State,* 575 S.W.2d 868, 869 (Mo.App.1978). In *Jones v. State,* 784 S.W.2d 789, 793 (Mo. banc 1990) the court stated:

> We will not permit motion counsel to convert un preserved error into viable error by arguing in competence. Defendants may be held to the consequences of coun-

sel's failure to object, whether the failure is the result of a strategic decision, or is due to inadvertence. The fact that a meritorious objection is not made does not demonstrate incompetence. There must be a showing that counsel's overall performance fell short of established norms and that this incompetence probably affected the result. Otherwise failure to object constitutes a procedural default, precluding appellate or collateral relief.

■ Further, in *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) the court noted "so long as defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) we discern no inequity in requiring him to bear the risk of attorney error." We will not hold counsel ineffective if he fails to make a non meritorious objection. *Walls v. State*, 779 S.W.2d 560, 562 (Mo. banc 1989). We now address the other points (VI and VII) regarding failure to properly preserve error by not raising them in the motion for a new trial.

■ In the case of police officers entering the appellant's motel room in Rolla before the murder without a search warrant there were exigent circumstances leading to the police entering. The law enforcement officers were attempting to apprehend Mr. Brown, an escaped convict who had just shot officer Horn. They "did not know if the shooter was still in the room or not." Having entered the room and having found no one, the officers could reasonably assume that the appellant had fled and abandoned his property located therein. *State v. Lingar*, 726 S.W.2d 728, 736 (Mo. banc 1987); *State v. Thompson*, 820 S.W.2d 591, 594 (Mo. App.1991). Their search of the premises was not illegal.

■ It may also be said that appellant abandoned the pick up truck that was not his property but which had been stolen. Appellant therefore had no standing to contest the search of his room or of the stolen truck. *State v. Luleff*, 729 S.W.2d 530 (Mo.App. 1987).

■ Movant's trial counsel was not ineffective in failing to raise these issues in his motion for a new trial. At the motion hearing, trial counsel stated that he included in the motion for a new trial those things that he thought had merit on appeal. On cross examination the trial counsel stated that he did not include those matters in the motion for new trial " . . . because we didn't think it was a valid issue on appeal. The property had been abandoned. He (Mr. Brown) had . . . removed himself from a claim . . . that he could assert he had an interest in that in the first place. The theory was not that it "wasn't him at Howard Johnson or it wasn't him that owned the truck or wasn't him that was in the room or him that shot J. Horn but merely that it wasn't him that shot Claude Long."

■ Counsel will not be deemed ineffective for failing to raise non meritorious defenses. *Walls v. State*, 779 S.W.2d 560, 563 (Mo. banc 1989). It is not demonstrated by this record and movant has failed to demonstrate that his trial counsel acted deficiently. *Strickland*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

■ In order to show prejudice necessary to sustain a claim for ineffective assistance of counsel, movant must show a reasonable probability that absent the alleged error, the jury would have reasonable doubt regarding his guilt. *Richardson v. State*, 719 S.W.2d 912, 915–16 (Mo.App.1986). A movant bears a heavy burden to demonstrate ineffective assistance of counsel. *Id.* at 915. Movant has not met this burden and the judgment of the motion court is affirmed.

Points V, VI, and VII are denied.

■ In point VIII, appellant alleges that the motion court erred in denying his postconviction relief motion because his trial counsel adopted a defense theory that Mr. Long was shot accidentally by law enforcement personnel searching for appellant. This defense by appellant's attorney was strictly tactical or strategic trial tactic. We will not repeat our remarks under Points V, VI and VII except to note that trial strategy

is "virtually unchallengeable." *Strickland, supra,* at 690.

Under the circumstances the trial counsel did the very best he could with the facts he had to work with. In *Alexander v. State,* 782 S.W.2d 472 (Mo.App.1990) the movant argued that his trial counsel erred in arguing that appellant was guilty of manslaughter only and not guilty of first degree murder. Instead, appellant claimed his trial counsel should have argued that he did not shoot the deceased and was not guilty of the charge. This claim is similar to what we face herein. Appellant cites no cases in support of his argument, citing only *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the facts of this case, the defense was a tactical decision and under the circumstances the attempt to place a doubt in the jurors mind, albeit obliquely, was the best defense that trial counsel could offer.

Appellant's trial counsel was an experienced criminal attorney who had been engaged in the practice of law since 1983 and had tried over 100 jury criminal trials. He had tried 9 cases wherein the death penalty had been sought. Nothing in the record indicates that the appellant was in any way prejudiced by trial counsel's conduct of this trial.

Appellant's Point VIII is denied.

For his final point, appellant alleges that trial court erred in following the procedure contained in § 494.505 RSMo 1992 because the offense was committed before passage of the statute and following it amounted to an ex post facto application of the new statute. The appellant failed to raise this issue in his motion for a new trial. His eleven sentence argument under this point fails to address this fact. However, ex gratia we take up the point.

As the state observes in its brief, no ex post facto violation occurs if a new statutory provision does not alter substantial personal rights but merely changes modes of procedure which do not affect matters of substance. *State v. Lawhorn,* 762 S.W.2d 820, 824 (Mo. banc 1988). There is no ex post facto violation if the change in the law is merely procedural and does not increase the punishment and does not change the ingredients of the offense or the ultimate facts necessary to establish guilt. *Miller v. Florida,* 482 U.S. 423, 434, 107 S.Ct. 2446, 2452–53, 96, 96 L.Ed.2d 351 (1987).

Section 494.505 provides that when the inhabitants of the county where a criminal case is pending appear to be so prejudiced against the defendant that a fair trial cannot be had, the circuit court judge may order jurors summoned from another county. This statutory provision is clearly procedural, and hence no ex post facto violation occurred.

Accordingly, the judgments of the trial court and the motion court are affirmed.

All concur.