**Carlton E. MILLER, # 162970, Appellant, Pro Se,**

v.

**Cranston MITCHELL, Respondent.**

**No. WD 58220.**

Missouri Court of Appeals, Western District.

Aug. 29, 2000.

29.12(c), as it pertains to clerical mistakes.

Carlton E. Miller, #162970, Moberly, pro se.

Cassandra K. Dolgin, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., SMART and EDWIN H. SMITH, JJ.

PATRICIA BRECKENRIDGE, Judge.

Carlton E. Miller appeals the trial court's entry of summary judgment in favor of Cranston Mitchell, the Chairman of the Missouri Board of Probation and Parole (the Board), on Mr. Miller's petition for declaratory judgment. On appeal, Mr. Miller claims that the Board was not entitled to judgment as a matter of law because the application of a Department of Corrections' policy which denied him release on his conditional release date for failing to successfully complete the Missouri Sex Offender Program (MOSOP) violated the *ex post facto* clauses of the Missouri and United States Constitutions by substantially altering the consequences attached to his crime. Mr. Miller also claims that he had a liberty interest in being released on his conditional release date and was denied his right to procedural due process. The judgment of the trial court is affirmed.

### Factual and Procedural History

On appeal from an order granting summary judgment, this court reviews the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). In August of 1987, Mr. Miller pleaded guilty to one count of assault in the first degree, one count of attempted forcible rape, and two counts of unlawful sale of an explosive weapon. On December 21, 1987, the court sentenced Mr. Miller to fourteen years' imprisonment on the assault charge, five years' imprisonment on the attempted forcible rape charge, and four years' imprisonment on each of the unlawful sale of an explosive weapon charges. All sentences were to be served concurrently. Thus, Mr. Miller was to serve a total term of imprisonment of fourteen years.

At the time of Mr. Miller's offenses, § 589.040, RSMo 1986, required that all persons imprisoned by the Department of Corrections for sexual assault offenses participate in MOSOP, a treatment, education, and rehabilitation program whose goal is "the prevention of future sexual assaults by the participants in such programs." Section 589.040 was amended in 1990 to require that all inmates imprisoned for sexual assault offenses "successfully

complete" MOSOP. Section 589.040.2, RSMo 1994.[1]

Mr. Miller alleges that he was told initially by a Missouri Board of Probation and Parole official that if he did not participate in and complete MOSOP, he would have to remain incarcerated until his conditional release date and could not be released on parole before that date. Mr. Miller refused to participate in or complete MOSOP because he believed his participation in the program would require him to admit that he committed the attempted forcible rape. Mr. Miller alleges that Department of Corrections officials agreed to excuse him from completing MOSOP on the condition that he forego early release and remain incarcerated until his conditional release date.

In October of 1996, the Department of Corrections notified Mr. Miller that it had implemented a revised MOSOP policy. Under the Department's new policy, all persons required by § 589.040 to successfully complete MOSOP who failed to do so could have their conditional release date extended up to their maximum release date.

In September of 1997, the Board notified Mr. Miller that his scheduled conditional release date was December 10, 1998. In March of 1998, however, the Board held a conditional release extension hearing. Mr. Miller personally appeared at the hearing to answer charges that he had violated the rules and regulations of the Division of Adult Institutions. Following the hearing, the Board determined that Mr. Miller's failure to complete MOSOP warranted the extension of his conditional release date up to his maximum release date of December 10, 2001.

In response to the decision of the Board to extend his conditional release date up to his maximum release date due to his failure to complete MOSOP, Mr. Miller filed a

petition for declaratory judgment in the Circuit Court of Cole County against Mr. Mitchell, as Chairman of the Board. In his petition, Mr. Miller alleged that the application of the Department of Corrections' July 1, 1996 revised policy which denied him release on his conditional release date due to his failure to complete MOSOP violated the *ex post facto* clauses of the Missouri and United States Constitutions. Mr. Miller also alleged that the Board's refusal to release him on his conditional release date violated his right to due process of law because it deprived him of a protected liberty interest. Mr. Miller asked the court to declare (1) that the Board was required to release him on December 10, 1998, "in accordance with its longstanding custom of agreeing to release sexual offenders when 3/4ths of their sentence has been served even when they have not completed MOSOP;" and (2) that the application of the July 1, 1996 revision to the Department of Corrections' policy regarding MOSOP violated the *ex post facto* clauses of the state and federal constitutions and cannot be lawfully applied to him.

In response, the Board filed an answer, a motion for summary judgment, and suggestions in support of the motion for summary judgment. Mr. Miller subsequently filed a response to the motion for summary judgment. The trial court then granted the Board's motion for summary judgment. Mr. Miller filed this appeal.

### Standard of Review

■ Appellate review of a summary judgment is *de novo*. *ITT Commercial Finance*, 854 S.W.2d at 376. In reviewing the record in the light most favorable to the party against whom the judgment was entered, this court is to "accord the non-movant the benefit of all reasonable inferences from the record." *Id.* Summary judgment is appropriate if there are no

1. All statutory references are to the Revised Statutes of Missouri 1994, unless otherwise

indicated.

genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 381. The Board, as the defending party, can establish a right to judgment as a matter of law by setting forth the following:

> (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.*

### The Department of Corrections' Policy is Not a "Law" Under the *Ex Post Facto* Clauses

In his first point, Mr. Miller argues that the Board was not entitled to judgment as a matter of law because the application of the July 1, 1996 Department of Corrections' policy requiring him to complete MOSOP or have his conditional release date extended up to his maximum release date violated the *ex post facto* clauses of the Missouri and United States Constitutions.

Mr. Miller's fourteen-year sentence consisted of a prison term and a conditional release term. § 558.011.4(1). Section 558.011.4(2), defines "conditional release" as follows:

> [T]he conditional discharge of an offender by the board of probation and parole, subject to conditions of release that the board deems reasonable to assist the offender to lead a law-abiding life, and subject to the supervision under the state board of probation and parole.

Pursuant to § 558.011.4(1)(b), Mr. Miller's conditional release term was three years. Therefore, Mr. Miller's conditional release date was December 10, 1998, three years prior to the expiration of his sentence.

In June of 1998, however, the Board extended Mr. Miller's conditional release date. Section 558.011.5 provides that the Board may extend an inmate's conditional release date up to the maximum release date when an inmate "fails to follow the rules and regulations of the division or commits an act in violation of such rules." The Board based its extension of Mr. Miller's conditional release date on the fact that Mr. Miller failed to complete MOSOP. Mr. Miller argues that at the time he committed his offenses in 1987, the Department of Corrections' policies and procedures did not require that he complete MOSOP prior to being conditionally released. In support of this contention, he presented the following notice he alleged he received in October of 1996:

!! Notice !!

Attention MoSOP Inmate:

Effective July 1, 1996, the Department of Corrections has implemented a revised MoSOP policy and procedures that may increase the length of time you serve in prison.

Effective July 1, 1996, any inmate who is required by Chap. 589.040, Revised Statutes of Missouri, or by the Board of Probation and Parole to successfully complete MoSOP, but fails to do so may have their Conditional Release Date removed by the Parole Board. This means that if you refuse to participate in MoSOP, or are terminated from the MoSOP, the Director of MoSOP will ask the Parole Board to remove and extend your Conditional Release date up to your maximum release date.

The result of removing your Conditional Release Date will be that you will serve more time in prison, possibly up to your maximum release date.

\* \* \*

A reasonable inference from the notice is that prior to July 1, 1996, the Department

of Corrections' policies and procedures did not require that sexual offenders complete MOSOP or risk having their conditional release date extended up to their maximum release date. Mr. Miller argues that the application of the revised policy violated the prohibition against *ex post facto* laws.

 "The constitutions of the United States and Missouri forbid *ex post facto* laws." *Fults v. Missouri Bd. of Probation and Parole*, 857 S.W.2d 388, 390 (Mo.App. 1993) (citing U.S. CONST. art. I § 9, cl. 3, and art. I, § 10 cl. 1; and Mo. CONST. art. I, § 13). *Ex post facto* laws are laws which are retrospective and which disadvantage the affected offender "by altering the definition of criminal conduct or increasing the punishment for the crime[.]" *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 896 137 L.Ed.2d 63 (1997); *State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133, 136 (Mo. banc 1995). The purposes of the *ex post facto* clauses are to "curtail legislative vindictiveness and provide fair notice of criminal laws and their punishments." *Fults*, 857 S.W.2d at 390 (citing *Weaver v. Graham*, 450 U.S. 24, 28–29, 101 S.Ct. 960, 963–64, 67 L.Ed.2d 17 (1981)).

 The prohibition against *ex post facto* laws is "directed to the legislature rather than to other branches of government." *Fults*, 857 S.W.2d at 390. Thus, the *ex post facto* clauses apply to laws enacted by the legislature. *Id.* at 390–91. The *ex post facto* clauses also apply to an agency's duly-promulgated substantive regulations, as they have the force and effect of laws. *See Cosada Villa of Missouri, Inc. v. Missouri Dept. of Social Services*, 868 S.W.2d 157, 160 (Mo.App. 1994). This is so because in promulgating regulations, the agency is exercising delegated legislative authority; thus, "the rules are as if made by [the legislature]." *Prater v. U.S. Parole Com'n*, 802 F.2d 948, 954 (7th Cir.1986).

 Unlike an agency's rules and regulations, however, an agency's policies or procedures do not constitute enacted laws. *Id.* Rather, an agency's policies and procedures are "statements of enforcement policy." *Id.* Thus, "[i]f the law is unchanged and no legislative regulations are promulgated, a mere change in enforcement methods, priorities, or policies, written or unwritten—a change within the scope of the executive branch's discretion in enforcing the laws passed by [the legislature]—does not activate the prohibition against ex post facto laws." *Id.* When "all that has changed is the vigor with which criminal laws are being enforced," as opposed to the criminal laws themselves, the notice protection afforded by the *ex post facto* clauses is not impinged. *Id.* at 953. "Settled expectations regarding the vigor of enforcement are unreasonable." *Id.* Moreover, to apply the rule against *ex post facto* laws to an agency's policies and procedures would penalize the agency for codifying its practices, and "[e]very criminal case would become an inquiry into the history of enforcement of the statute under which the criminal had been punished[.]" *Id.*

In this case, at the time of Mr. Miller's conviction in 1987, § 589.040, RSMo 1986, required that all sexual assault offenders at least participate in MOSOP. This statute was amended in 1990 to require that all sexual assault offenders "successfully complete" MOSOP. § 589.040. Mr. Miller specifically states in his brief that he is not claiming that the application of the amended statute's requirement that he successfully complete MOSOP violates the *ex post facto* clauses.[2] Additionally, he concedes that the Department has the authority to prescribe punishment for his failure to complete MOSOP. Mr. Miller's sole complaint is that the Department's promulgation of its revised policy requiring inmates to successfully complete MOSOP or risk having their conditional release date extended violates the *ex post facto* clauses.

---

2. Regardless, Mr. Miller has not participated in MOSOP.

By changing its policy, the Department was not enacting a new law. Rather, it was changing its enforcement of an existing law, § 589.040, to conform with that law's requirement that all sexual offenders successfully complete MOSOP. The potential extension of an inmate's conditional release date upon the failure to complete MOSOP is merely an enforcement mechanism for ensuring compliance with the statute. Therefore, the Department of Corrections' revised policy does not implicate the *ex post facto* clauses of the Missouri and United States Constitutions. Mr. Miller's first point is denied.

### Mr. Miller Received Procedural Due Process

 In his second point, Mr. Miller argues that he had a liberty interest in being released on his conditional release date, and the failure to conditionally release him on that date violated his right to procedural due process. An inmate does not have a "constitutional or inherent right to be conditionally released before the expiration of a valid sentence." *Fults,* 857 S.W.2d at 392. A protected liberty interest in parole may arise through the language used in statutes and regulations, however, where the language "justifies the legitimate expectation that if the stated criteria are satisfied, the prisoner will be entitled to parole." *Id.* at 392–93.

This court has held that an inmate does not have a protected liberty interest in conditional release. *Elliott v. Carnahan,* 916 S.W.2d 239, 241–42 (Mo.App.1995), (finding no liberty interest in conditional release because the statutory scheme "allows the board discretion as to the date of release based upon the conduct of the prisoner."). Mr. Miller essentially asks us to revisit this issue. It is not necessary for this court to do so. Even if we were to find that Mr. Miller had a protected liberty interest in conditional release under § 558.011, the record indicates that Mr. Miller received the protections afforded by procedural due process, as he had notice and an opportunity to be heard at a hearing before the Board prior to the Board's extension of his conditional release date. *See Dycus v. Cross,* 869 S.W.2d 745, 749 (Mo. banc 1994). Although Mr. Miller claims that he was denied the opportunity at that hearing to present evidence that he had served his sentence "in an orderly and peaceable manner," that evidence was not relevant to the dispositive issue regarding the extension of his conditional release date, i.e., his failure to successfully complete MOSOP. Mr. Miller's second point is denied.

The judgment of the trial court is affirmed.

All concur.