**Michael A. DAVIS, Appellant Pro Se,**

v.

**Gary B. KEMPKER, Respondent.**

**No. WD 64237.**

Missouri Court of Appeals,
Western District.

June 21, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 2, 2005.

Michael A. Davis, Cameron, pro se.

Matthew Briesacher, Assistant Attorney General, Jefferson City, MO, for respondent.

Before ROBERT G. ULRICH, Presiding Judge, JAMES M. SMART, JR., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Michael Davis is a prisoner in the Missouri Department of Corrections (MDOC). Following his conviction for offenses occurring in 1989, Davis began his incarceration in June 1991. The MDOC staff initially classified him as a level 5 offender, assigning him to a level 5 correctional center. In January and February of 1999, the MDOC staff recommended Davis' transfer from a level 5 correctional center to a level 4 facility and reclassified Davis' custody score to a level 4. Pursuant to this reclassification, MDOC transferred Davis from a level 5 institution to a level 4 institution, Moberly Correctional Center.

On January 1, 2003, MDOC revised its classification policies. Under the new classification system, Davis' classification score was reclassified from a level 4 to 5. However, MDOC created a "Reclassification Grandfather Clause," allowing offenders with "exceptional institutional adjustment" the opportunity to be placed at a correctional center consistent with the offender's previous classification. Under this grandfather provision, Davis is eligible to be reclassified from a level 5 to a level 4 offender. The new classification policies also reclassified Moberly Correctional Center from a level 4 correctional center to a level 3.

Davis filed a "Petition to Proceed *In Forma Pauperis*" pursuant to § 506.366 [1] on January 23, 2004, with the Circuit Court of Randolph County. On February 4, 2004, the circuit court granted this petition, granting him leave to proceed *in forma pauperis*, according to the provisions of the Prisoner Litigation Reform Act (PLRA).

---

[1] All statutory references are to RSMo 2000 unless otherwise noted.

On February 20, 2004, Davis filed a "Petition for Declaratory and Injunctive Relief," seeking a declaration that the revised MDOC classification policies were unconstitutional and requesting injunctive relief to prevent MDOC from applying the new classification provisions to Davis. On April 13, 2004, Gary Kempker (Respondent), Director of MDOC, filed his answer to Davis' petition. In his answer, Respondent claimed, among other affirmative defenses, that venue was not proper in the Circuit Court of Randolph County and that Davis failed to state a claim upon which relief may be granted. Respondent, contemporaneously with his answer, filed a "Motion for Judgment on the Pleadings," asking the court to dismiss the case for failure to state a claim upon which relief can be granted pursuant to Rule 55.27(a).

On April 21, 2004, the circuit court granted Respondent's motion for judgment on the pleadings. Davis filed his "Petitioner's Motion For Relief From Judgment or Order and Petitioner's Motion for Change of Venue" on May 3, 2004, which the court denied on May 4, 2004. In his motion, Davis asked the court to set aside its judgment or order, and he requested the court enter an order transferring the cause to the Circuit Court of Cole County. He stated that, in response to Respondent's motion to dismiss, he "must agree with the respondent that 'Venue is not proper with this Court.'" Davis appeals.

Initially, we must address Respondent's claim that this court lacks jurisdiction over this appeal. Respondent claims that Davis failed to timely file his notice of appeal, and, therefore, this Court lacks jurisdiction. For the following reasons, we determine that this Court has jurisdiction to hear this cause.

On April 21, 2004, the Circuit Court of Randolph County denied Davis' motion for declaratory and injunctive relief. Davis filed a timely motion for relief from the judgment on May 3, 2004, which the court denied on May 4, 2004. The circuit court date stamped Davis' notice of appeal as received on June 1, 2004, and it formally filed his notice of appeal on June 3, 2004.

Pursuant to Rule 81.04(a), a notice of appeal must be filed no later than ten days after the judgment or order appealed from becomes final. Rule 81.05(a)(1) provides that, if no timely authorized after-trial motion is filed, a judgment or order becomes final thirty days after its entry. If, as in the present case, a party files a timely and authorized after-trial motion, the judgment becomes final at the date of the last motion's ruling or thirty days after the entry of judgment, whichever date is later. Rule 81.05(a)(2)(B).

■ Respondent argues that Davis' notice of appeal was due no later than May 21, 2004, thirty days after the circuit court's entry of judgment, pursuant to Rule 81.05(a)(2)(B). Respondent claims that Davis filed his notice of appeal on June 3, 2004, and, therefore, this Court lacks jurisdiction. Davis points out that he filed a motion for relief from the judgment on May 3, 2004. The circuit court denied this motion on May 4, 2004. Rule 81.05(a)(2)(B) states that the judgment becomes final on "the date of ruling of the last motion to be ruled or thirty days after the entry of judgment, *whichever is later.*" (emphasis added). The date of the ruling of the last motion in the present case is May 4, 2004, the date the circuit court denied Davis' motion for relief from the judgment. Applying Rule 81.05(a)(2)(B), we compare the "date of ruling of the last motion," here May 4, 2004, with the date "thirty days after the entry of judgment," here May 21, 2004, and use "whichever is later" as the date "the judgment becomes final." May 21, 2004 is the later date, so the judgment became final on May 21, 2004.

Rule 81.04(a) specifies that "the notice of appeal shall be filed not later than ten days after the judgment or order appealed from becomes final." Applying this rule, the notice of appeal was required to have been filed by May 31, 2004. However, as Davis correctly argues, Rule 44.01(a) states the rule for computing the time prescribed by the Missouri Court Rules, including a description of the computation of the last day of the designated time period:

> The last day of the period so computed is to be included, unless it is a Saturday, Sunday, or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday.

We take judicial notice of the fact that Monday, May 31, 2004, was a legal holiday, Memorial Day, which falls on the last Monday in the month of May.[2]

Applying Rule 44.01(a), the last day of the prescribed time period fell on a legal holiday, so the time period for Davis to file his notice of appeal ran until the next day, Tuesday, June 1, 2004. Davis mailed his notice of appeal and his motion to proceed on appeal *in forma pauperis* on May 27, 2004. The record reflects that the Circuit Court of Randolph County received Davis' notice of appeal on June 1, 2004, as evidenced by a date stamp on his notice of appeal from the court clerk. Davis' motion to proceed *in forma pauperis* was also received by the Circuit Court on June 1, 2004.

While the court received Davis' notice of appeal on June 1, 2004, the last day for Davis to timely file his notice of appeal, it did not formally file the notice of appeal until June 3, 2004, after the court granted his motion to proceed *in forma pauperis*.

Davis argues that he timely presented his notice of appeal to the circuit court for filing, because the circuit court received his notice of appeal the last day his notice could be timely filed. As the Missouri Supreme Court explained in *Labrier v. Anheuser Ford, Inc.*:

> The filing is the actual delivery of the paper to the clerk without regard to any action that he may take thereon. Thus, it may be said to be the general rule that the deposit or lodgment of the instrument for filing, in the proper office and its acceptance for that purpose by the proper officer constitutes a filing within the meaning of the law. A paper or document is said to be filed when it is delivered to the proper officer and lodged by him in his office.

621 S.W.2d 51, 54 (Mo. banc 1981) (internal quotations and citations omitted). However, Rule 81.04(c) expressly provides that a trial court clerk shall not accept or file a notice of appeal unless one of three conditions is met: (1) the docket fee is deposited with the trial court clerk; "(2) [t]he appellant is not required by law to pay the docket fee; or (3)[a]n order permitting the appellant to prosecute the appeal *in forma pauperis* accompanies the notice of appeal." In this case, Davis did not pay the docket fee, a docket fee was required, and he did not have an order from the court permitting him to proceed *in forma pauperis* as of June 1, 2004. The court received his petition to proceed *in forma pauperis* on June 1, 2004, the last day for him to timely file his notice of appeal, but the court order granting his petition to proceed *in forma pauperis* is dated June 3, 2004, two days after the specified time limit to file a notice of appeal.

*Mo. Highway & Transp. Comm'n v. Overall*, 73 S.W.3d 779, 782 (Mo.App. E.D.2002).

---

2. Appellate courts take judicial notice of calendars, legal holidays, and dates on which a particular day of the week fell. *State ex rel.*

Although a notice of appeal typically will not be considered filed until the docket fees are paid, an exception applies "when an appellant has done 'all he could do' by timely tendering his notice of appeal and request to file as a poor person.'" *State v. Lawrence*, 139 S.W.3d 573, 575 (Mo.App. E.D.2004) (quoting *State v. Mitchell*, 128 S.W.3d 518, 520 (Mo.App. 2003)).

> In such instances, the timeliness of the notice of appeal will not be defeated simply because the court does not grant the *in forma pauperis* motion within the time for filing the appeal. In these circumstances, the granting of leave to appeal *in forma pauperis* causes the filing date for the notice of appeal to relate back to the date on which it was first tendered for filing.

*Id.* (internal citations omitted) (italics added).

Since the circuit court received Davis' notice of appeal and his petition to proceed *in forma pauperis* within the prescribed time period, Davis had done all that he could do to comply with Rule 81.04. The order of the trial court granting Davis leave to proceed *in forma pauperis* dated June 3, 2004, and the clerk's filing of the notice of appeal on that date relate back to the date that the notice of appeal was tendered to the circuit court, June 1, 2004, the last day for Davis to timely file his notice of appeal. Therefore, Davis' notice of appeal was timely filed. Accordingly, this court has jurisdiction over Davis' appeal.

In his first point on appeal, Davis challenges the circuit court's denial of his motion for change of venue. Davis' claims in this regard are wholly without merit. In response to the court's order granting Respondent's motion for judgment on the pleadings, Davis filed a "Petitioner's Motion for Relief from Judgment or Order and Petitioner's Motion for Change of Ven-

ue." In that motion, Davis requested that the court transfer his cause to the Cole County Circuit Court. The circuit court summarily denied this motion.

Davis filed the petition for declaratory and injunctive relief, and, as the petitioner, he chose to file the action in Randolph County. Under Missouri law, venue is "a mere personal privilege which may be waived by the party entitled to assert it." *Bellon Wrecking & Salvage Co. v. David Orf, Inc.*, 983 S.W.2d 541, 547 (Mo.App. E.D.1998) (quoting *Osage Homestead, Inc. v. City of New Florence*, 713 S.W.2d 51, 52 (Mo.App. E.D.1986)). Moreover, venue must be challenged at the earliest opportunity, and "[a]ny action related to the merits of the cause will waive objection to venue unless a prior challenge has been filed." *State ex rel. Uptergrove v. Russell*, 871 S.W.2d 27, 29 (Mo.App. W.D.1993). In other words, "[v]enue may be waived when a defendant makes no motion or pleading on the issues but otherwise subjects himself to the jurisdiction of the court." *In re Marriage of Ottmann*, 764 S.W.2d 153, 154 (Mo.App. W.D.1989).

In the case *sub judice*, Davis chose to bring his action in Randolph County, subjecting himself to the jurisdiction of the court. Respondent filed his Answer, in which he objected to venue, as well as a Motion for Judgment on the Pleadings. Davis made no claim regarding the impropriety of venue. Some two months after Davis filed his Petition, the trial court granted Respondent's Motion for Judgment on the Pleadings. It was only after the trial court entered judgment against him that Davis complained about erroneous venue. Under these circumstances, Davis waived any objection to venue that he might have otherwise had. Point I is denied.

In his second point, Davis claims the circuit court erred in granting Re-

spondent's motion for judgment on the pleadings. In summary, Davis alleges that Respondent violated constitutional prohibitions against the enactment of *ex post facto* laws in the creation and application of a revised Classification Users Manual, which resulted in the reclassification of his offender level and transfer to a high security center. He asserts that the classification revisions impose an increased punishment, making them collateral consequences of his conviction more severe than at the time of the commission of the crimes and the time of his conviction, pursuant to § 561.016 R.S.Mo. (1986).

 Both the United States and Missouri constitutions forbid *ex post facto* laws. *Fults v. Missouri Bd. of Prob. & Parole,* 857 S.W.2d 388, 390 (Mo.App. W.D.1993) (citing *U.S. Const. art. I, § 9, cl. 3,* and *art. I, § 10, cl. 1; Mo. Const. art I, § 13*). "*Ex post facto* laws are laws which are retrospective and which disadvantage the affected offender 'by altering the definition of criminal conduct or increasing the punishment for the crime [.]' " *Miller v. Mitchell,* 25 S.W.3d 658, 663 (Mo. App. W.D.2000) (quoting *Lynce v. Mathis,* 519 U.S. 433, 441, 117 S.Ct. 891, 896, 137 L.Ed.2d 63 (1997)). The *ex post facto* prohibitions apply to the legislature, but may also be applied to "an agency's duly-promulgated substantive regulations, as they have the force and effect of laws." *Id.*

> Unlike an agency's rules and regulations, however, an agency's policies or procedures do not constitute enacted laws. Rather, an agency's policies and procedures are "statements of enforcement policy." Thus, "[i]f the law is unchanged and no legislative regulations are promulgated, a mere change in enforcement methods, priorities, or policies, written or unwritten—a change within the scope of the executive branch's discretion in enforcing the laws

passed by [the legislature]—does not activate the prohibition against *ex post facto* laws." When "all that has changed is the vigor with which criminal laws are being enforced," as opposed to the criminal laws themselves, the notice protection afforded by the *ex post facto* clauses is not impinged.

*Id.* (quoting *Prater v. U.S. Parole Comm'n,* 802 F.2d 948, 954 (7th Cir.1986)). If the change is merely procedural and the punishment is not increased, there is no infringement on the prohibition against *ex post facto* laws. *State v. Brown,* 867 S.W.2d 530, 538 (Mo.App. W.D.1993).

In this case, the Department of Corrections revisions to its offender classification manual are not legislation or agency regulation, and the *ex post facto* clauses are not impinged. The 2003 revisions to the classification policies do not impose a change to the criminal laws themselves, only a change in the "methods, priorities, or policies" of MDOC's classification system, altering the way MDOC classifies an offender, and, based upon this classification, within which institution an offender may be housed.

 Davis claims that MDOC should not be permitted, under the new classification system, to transfer him from Moberly Correctional Center to a high security institution. A prisoner's administrative transfer from one penal institution to another penal institution does not constitute an increase in his level of punishment. "An inmate enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to an administrative transfer." *Cooper v. State,* 818 S.W.2d 653, 655 (Mo.App. W.D.1991). "Once a conviction has extinguished a person's interest in remaining free from the custody of the state, the state has the authority to place that person in *any institution* that

will satisfy the state's penological objectives." *Dudley v. Shaver,* 770 S.W.2d 712, 714 (Mo.App. W.D.1989) (emphasis added). Because Davis' conviction resulted in his custody in a state penal institution, the state has the authority to place him in any institution. *See Id.* We also note that, even under the revised manual's grandfather clause, Davis, as a level 4 offender, lacks eligibility to be housed at Moberly Correctional Center, a level 3 correctional center, under the revised classification system. The trial court did not error in finding the issues in favor of Respondent on these claims. Point II is denied.

 In his third point, Davis claims the circuit court erred in its application of the Prisoner Litigation Reform Act (PLRA), requiring him to pay the full filing fee and all court costs when bringing this civil action. He further asserts that the enactment of the PLRA impinges upon the *ex post facto* clauses of the United States and Missouri constitutions, alleging that the requirement that he pay the full filing fee and court costs imposes additional collateral consequences of conviction in violation of § 561.016. At the outset of this appeal, Davis filed a motion to proceed on appeal *in forma pauperis* pursuant to § 506.366. The court granted his motion, ordering that funds be withdrawn from his correctional center account on a monthly basis until the filing fee is paid in full, pursuant to the PLRA.

In 1997, Missouri enacted the Prisoner Litigation Reform Act, §§ 506.360 to 506.390. Section 506.366 provides:

An offender seeking to bring a *civil action* or to appeal a judgment in a *civil action* without the prepayment of fees or security due to indigency shall submit a request to the court to proceed without the prepayment of fees. The request shall include a certified copy of the offender's correctional center account statement, which shall be provided by the department of corrections for the six-month period immediately preceding the filing of the petition or notice of appeal.

(emphasis added). By its plain language, the PLRA applies to civil actions or to an appeal of judgment in a civil action. Sections 506.369 and 506.372 provide for the partial payment of court costs in monthly installments until all the fees are paid in full.

 The PLRA was not in effect at the time the crimes were committed, nor at the time he was sentenced. However, as discussed in the previous point, an *ex post facto* violation does not occur if a change in law is procedural in nature and the punishment is not increased. *Brown,* 867 S.W.2d at 538. As the United States Supreme Court has explained, "the inhibition upon the passage of *ex post facto* laws does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed." *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344, 356 (1977) (internal quotations omitted).

 In *State ex rel. Nixon v. Taylor,* 25 S.W.3d 566 (Mo.App. W.D.2000), a prisoner claimed that the enactment of the Missouri Incarceration Reimbursement Act (MIRA) violated the prohibition against the imposition of *ex post facto* laws in requiring incarcerated individuals to reimburse the state for the expense of incarceration. *Id.* at 567. At the time of the prisoner's offenses, MIRA was not in effect. *Id.* This Court noted that MIRA did not focus on the prisoner's past crimes, nor was it enacted to provide additional punishment. *Id.* at 568. In addition, a statute does not impose *ex post facto* penalties unless enacted for a punitive purpose. *Id.* "If the law in question is focused on the past crime, then it is likely intended as a punishment, while if the focus is upon the

benefit from which the person is barred, it is not, even though the impact on the individual may be harsh." *Id.* (internal quotations omitted).

█ In the present case, the PLRA does not present an *ex post facto* violation. Like MIRA, the PLRA does not focus on a past crime, nor did the legislature enact the changes for a punitive purpose. The PLRA relates to the nonpunitive objective of requiring prisoners to cover the court costs associated with their civil actions or appeals from judgments in civil actions. Here, "[t]he crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute." *Dobbert,* 432 U.S. at 294, 97 S.Ct. at 2298–99 (internal quotations omitted). The provisions of the PLRA are procedural in nature and do not increase a prisoner's punishment and, therefore, do not violate the prohibition against *ex post facto* laws. *See Wilson v. Yaklich,* 148 F.3d 596, 606 (6th Cir.1998). Point III denied.

## ON MOTION FOR REHEARING OR TRANSFER

An Order affirming the trial court's judgment, with a memorandum explaining the reasons provided to the parties, was issued in this case on March 29, 2005. A Motion for Rehearing or, in the Alternative, Application for Transfer was timely filed. The Motion for Rehearing was denied, and the Application for Transfer to the Supreme Court was denied, on May 3, 2005. On the same date, however, the Court on its own motion withdrew the Order opinion of March 29, 2005, and the case was resubmitted to the same panel without additional briefing or argument. We did so to address Davis' pending "Motion for Order Vacating Payment of Full Filing Fee and for Order Directing Reimbursement for All Excessive Filing Fees Paid."

█ In the latter motion, Davis alleges that the circuit court improperly ordered him to pay the entire filing fee for both his initial "Petition for Declaratory and Injunctive Relief" and this appeal. A review of the record reveals that the trial court initially granted Davis leave to proceed *in forma pauperis* pursuant to the provisions of the Prisoner Litigation Reform Act, § 506.360 *et seq.,* and ordered Davis to pay an initial partial filing fee of $9.25. Thereafter, the trial court entered a second order as to the fees on appeal in which it declined to set an initial partial filing fee. Yet, in both instances, the court ordered that funds be withdrawn from Davis's correctional center account, pursuant to the PLRA, and forwarded monthly until the entire filing fees were paid in full. Davis asserts that the PLRA does not require an indigent inmate to pay the full filing fee.

There is no question that the PLRA is applicable here. Section 506.366 provides that "[a]n offender seeking to bring a civil action or to appeal a judgment in a civil action without the prepayment of fees ... shall submit a request to the court to proceed without the prepayment of fees." The request must include the inmate's Department of Corrections (DOC) account statement for the six month period immediately preceding the filing of the petition or notice of appeal. *Id.* Section 506.369.1 states that if the court determines that an inmate who submits a request pursuant to § 506.366, *supra,* is unable to pay the full amount of court costs, the court shall assess a partial payment of the fee using one of two alternate formulas based on the figures contained in the inmate account statement. Finally, Section 506.372 provides that "[i]f the court has entered an order for payment of fees in installments pursuant to section 506.369, the offender

shall make monthly payments to the department of corrections of twenty percent of the preceding month's income credited to the offender's account until the fees are paid in full." The statute then provides that MDOC forward such payment for deposit in the general revenue fund until the fees are paid in full. *Id.*

Davis relies on *State ex rel. Nixon v. Moore*, 108 S.W.3d 813 (Mo.App. W.D. 2003). In that case, inmate Moore argued that the trial court erred in ordering him to pay the full filing fee for his appeal. *Id.* at 820. The trial court had ordered Moore to pay an initial partial filing fee of $19.64 and, when that was paid, ordered him to pay the remaining balance of the filing fee. *Id.* This Court held that the trial court erred in ordering Moore to pay the remaining amount of the filing fee. *Id.* In doing so, the Court relied on the opening paragraph of § 506.369, which states: "If the court ... determines that an offender is unable to pay the full amount of court costs due with respect to a case, the court shall assess a partial payment...."

Unfortunately, the parties in *Moore* did not refer the court to § 506.372, immediately following § 506.369 on which the court relied. Section 506.372 specifically references § 506.369: "If the court has entered an order for payment of fees in installments pursuant to section 506.369, the offender shall make monthly payments to the department of corrections of twenty percent of the preceding month's income credited to the offender's account *until the fees are paid in full.*" (emphasis added.) When §§ 506.369 and 506.372 are read together, it becomes clear that the legislature was setting out a procedure whereby inmates who are not financially capable of paying the entire filing fee up front can make installment payments on the fee. However, the inmate is required to keep making payments until the entire fee is paid. To the extent *Moore* can be

read as holding otherwise, it should no longer be followed.

For the foregoing reasons, Davis' motion asking for an order vacating full payment of the filing fee and directing that he be reimbursed for the payment of excessive fees is denied.

The judgment of the trial court is affirmed.

All concur.