Joseph Edward **FULTS**, Appellant,

v.

**MISSOURI BOARD OF PROBATION AND PAROLE**, Respondent.

**No. WD 46927.**

Missouri Court of Appeals, Western District.

May 25, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1993.

Application to Transfer Denied Aug. 17, 1993.

---

Joseph Edward Fults, appellant pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., June Striegel Doughty, Asst. Atty. Gen., Jefferson City, for respondent.

Before SMART, P.J., and SHANGLER and FENNER, JJ.

PER CURIAM.

The issues in this appeal are whether the application to a prisoner of parole guide-

lines, promulgated after the crimes were committed, violated the *ex post facto* and due process clauses of the United States and Missouri constitutions.

Fults, a prisoner, sought a declaratory judgment concerning the applicability of parole guidelines. He asserted that the Missouri Board of Probation and Parole had applied its 1985 parole guidelines to him in derogation of the *ex post facto* prohibition and his right to due process. Fults' earlier appeal from denial of relief was dismissed as premature in *Fults v. Missouri Bd. of Probation & Parole,* 826 S.W.2d 103 (Mo.App.1991). Thereafter, the trial court granted summary judgment in favor of the Board on the petition for declaratory judgment.

Fults is currently serving consecutive prison terms totaling forty years for convictions of rape, sodomy, and incest of his fifteen-year-old daughter. *State v. Fults,* 719 S.W.2d 46, 47 (Mo.App.1986). The crimes occurred in 1983. Fults was convicted and sentenced in 1984. He remained free on appeal bond until 1986, when he was delivered to custody.

After Fults' incarceration, a controversy arose over the applicability of parole guidelines. Reproduced in booklets distributed to prisoners, the guidelines consist of parole rules and regulations, promulgated by the Board pursuant to legislative directive.[1] Fults claimed entitlement to the 1982 guidelines in effect when he committed the crimes in 1983. The Board informed Fults that his parole determination would be governed by the 1985 guidelines in effect when Fults was delivered to custody in 1986.

To settle the controversy, Fults sought recourse through prison procedures. When they did not avail, he brought this petition for declaratory judgment. Fults claims a liberty interest in the 1982 guidelines. He claims also to have suffered serious disadvantages from the retrospective application of the 1985, rather than the 1982 guidelines. Fults interprets the 1982 guidelines to entitle him to parole eligibility

after serving one-fourth of his sentence, while the 1985 guidelines require serving one-third of his sentence. Fults also contends that the 1982 guidelines allowed consideration of a salient factor score, which he claimed would be favorable to his parole determination, but which was not available for consideration under the 1985 guidelines. Fults recognizes that his parole hearing is scheduled for 1996, and that his minimum parole eligibility date is set in 1999. Nevertheless, Fults asserts that the 1982 guidelines entitle him to an earlier minimum parole eligibility date.

Fults submits that the Board was not entitled to summary judgment. We examine *ex post facto* and due process principles in light of the claims presented.

### Ex Post Facto Claim

 The constitutions of the United States and Missouri forbid *ex post facto* laws. U.S. CONST. art. I, § 9, cl. 3, and art. I, § 10, cl. 1,; MO. CONST. art. I, § 13. Included in the constitutional prohibition against enactment of *ex post facto* laws is "every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Miller v. Florida,* 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987), (*quoting Calder v. Bull,* 3 U.S. (Dall.) 386, 1 L.Ed. 648 (1798)). An *ex post facto* violation arises when a criminal or penal law is applied retrospectively, and when that law disadvantages the offender affected by it. *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). The *ex post facto* clauses serve two important purposes: they curtail legislative vindictiveness and provide fair notice of criminal laws and their punishments. *Id.* at 28–29, 101 S.Ct. at 963–964.

 The *ex post facto* prohibition concerns *laws.* That prohibition is directed to the legislature rather than to other branches of government. *Prater v. United States Parole Comm'n,* 802 F.2d 948, 951 (7th Cir.1986). A law enacted by a legisla-

---

**1.** The booklets containing the 1982 and 1985 guidelines were respectively published as MBPP–259 (7–82) and MBPP–259 (10–85). The

regulations appear in 14 C.S.R. 80–2.010, *et seq.,* and previously appeared in 13 C.S.R. 80–2.010, *et seq.*

ture is a law for *ex post facto* purposes. *Miller*, 482 U.S. at 435, 107 S.Ct. at 2453. Yet guidelines issued by a parole authority are not laws under the *ex post facto* clauses when they operate as flexible guideposts for the exercise of the discretion granted by the legislature. *Portley v. Grossman*, 444 U.S. 1311, 1312, 100 S.Ct. 714, 715, 62 L.Ed.2d 723 (1980) (Rehnquist, J., as circuit justice); *Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir.1977).

In the majority of the federal circuits, the parole guidelines of the United States Parole Commission are not laws for *ex post facto* purposes.[2] *E.g., Wallace v. Christensen*, 802 F.2d 1539, 1553 (9th Cir.1986) (citing cases from other circuits); *Inglese v. United States Parole Comm'n*, 768 F.2d 932 (7th Cir.1985); *Dufresne v. Baer*, 744 F.2d 1543 (11th Cir.1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985). According to the majority view, the Commission's guidelines lack the force and effect of laws because Congress granted the Commission discretion to grant or deny paroles, and authority to promulgate and amend guidelines. Further, the Commission retains its authority to modify its guidelines, and its discretion to make parole decisions outside its guidelines. *Dufresne*, 744 F.2d at 1548–49; *Ruip*, 555 F.2d at 1335.

When parole guidelines are not laws, no *ex post facto* violation results from applying guidelines more severe than those in force when the crime was committed. *Prater*, 802 F.2d at 951. The *Wallace, Inglese,* and *Dufresne* cases illustrate that proposition. In those cases, the Commission applied its current guidelines to determine the prisoners' parole eligibility although the guidelines in effect at the time of the crimes accorded those prisoners more favorable salient factor scores and earlier presumed parole eligibility dates. *Wallace*, 802 F.2d at 1540–41; *Inglese*, 768 F.2d at 934–35; *Dufresne*, 744 F.2d at 1545. The

application of the current guidelines failed to implicate the *ex post facto* clauses because the guidelines lacked the force and effect of law. *Wallace*, 802 F.2d at 1553–54; *Inglese*, 768 F.2d at 935–36; *Dufresne*, 744 F.2d at 1550.

■ Here, before testing for an *ex post facto* violation, we determine whether the Board's parole guidelines constitute laws under *ex post facto* principles. Parole guidelines are not laws for *ex post facto* purposes when the parole authority has a legislative mandate to exercise discretion in parole decisions; *Bailey v. Gardebring*, 940 F.2d 1150, 1156 (8th Cir.1991); *cert. denied*, —— U.S. ——, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992); when the parole authority retains discretion to modify its parole guidelines and to deviate from them; *Bailey*, 940 F.2d at 1156; *Inglese*, 768 F.2d at 936; when the guidelines are stated policy rules that show how the parole authority is likely to exercise its discretion. *Dufresne*, 744 F.2d at 1550.

Our General Assembly has granted the Board extensive discretion in making parole decisions. § 217.690.1, RSMo Supp. 1984 (amended 1989).[3] That statute became effective in 1982, and was in effect when Fults committed his crimes. The provisions of § 217.690.1 reflect virtually absolute delegation of parole determinations to the Board:

"When *in its opinion* there is reasonable probability that an inmate of a state correctional institution can be released without detriment to the community or to himself, *the board may in its discretion* release or parole such person. All paroles shall issue upon *order of the board,* duly adopted." Section 217.690.1, RSMo Supp.1984 (amended 1989) [emphasis added].

Further, the General Assembly requires the Board to adopt rules regarding parole eligibility, hearings, and conditions, and it

---

**2.** The Third Circuit has determined the Commission's parole guidelines to be laws for ex post facto purposes. *United States ex rel. Forman v. McCall,* 709 F.2d 852, 859–62 (3d Cir.1983), *cert. denied,* 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986).

**3.** The amendment does not significantly affect the Board's discretion to make parole decisions. Section 217.690.1, RSMo Supp.1992.

authorizes the Board to amend and repeal its own rules. Sections 217.040.1, 217.-690.4, RSMo Supp.1984 (amended 1989).[4]

Following the legislative scheme, the Board adopted its 1982 and 1985 parole guidelines "to establish a uniform parole policy, [and to] promote consistent exercise of discretion and equitable decision-making without removing individual case consideration." MBPP–259 § 14A (7–82 & 10–85). The guidelines were designed to indicate the customary range of time to be served before release. MBPP–259 § 14B (7–82 & 10–85). In both versions, the Board declares its authority to make its release decisions above, below, and/or outside the time ranges indicated in the guidelines. MBPP–259 § 14B, E, F (7–82 & 10–85). Setting parole eligibility remains within the Board's discretion under the 1982 and 1985 guidelines. MBPP–259 § 4E (7–82); MBPP–259 § 12B (10–85). Both versions of the guidelines also specify that the Board shall periodically review the guidelines, including the salient factor score, and that the Board may revise or modify the guidelines at any time deemed appropriate. MBPP–259 § 14D (7–82 & 10–85).

■ We conclude that the Board's parole guidelines are not laws for *ex post facto* purposes. The Missouri parole scheme closely parallels the federal parole scheme. Under our statutes and guidelines, parole remains a discretionary decision. Our General Assembly conferred on the Board virtually limitless discretion in making parole determinations, and authorized the Board to promulgate and amend guidelines. The Board retains authority to modify its guidelines, and discretion to make release decisions outside the guidelines. The Board reserves its right to exercise its discretion in determining parole eligibility. The Board's guidelines do not set mandatory standards, but clarify the Board's exercise of discretion. The guidelines provide a flexible framework for the Board's exercise

of its discretion. Merely advisory, the guidelines indicate the customary time to be served before a prisoner can expect parole. The Board's power to exercise discretion demonstrates that the guidelines are guides, not laws; guides may be discarded where circumstances require; laws may not. *Cf. Inglese,* 768 F.2d at 936. The parole guidelines lack the characteristics of laws: they were not promulgated by any legislature; they do not state rules of conduct for the public; they are not fixed and rigid. *Cf. Dufresne,* 744 F.2d at 1549–50; *Ruip,* 555 F.2d at 1335.

Without the existence of laws, the *ex post facto* clauses are not offended. Fults' claim need not be subjected to *ex post facto* testing. Even if the Board had applied to Fults amended guidelines containing more severe standards, no *ex post facto* violation would have occurred. *Cf. Prater,* 802 F.2d at 951. Because we hold that the parole guidelines are not laws, Fults' *ex post facto* claim fails, and the summary judgment on that claim stands.

### Due Process Claim

■ Due process protects liberty interests. U.S. CONST. amend. XIV, § 1; MO. CONST. art. I, § 10. A prisoner has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). Nor does a prisoner have a protectible expectation of parole by virtue of the mere existence of a parole system. *Inglese,* 768 F.2d at 940. Nevertheless, a state may create a protected liberty interest in parole through language in statutory or regulatory measures. *Greenholtz,* 442 U.S. at 12, 99 S.Ct. at 2106; *Cooper v. Missouri Bd. of Probation & Parole,* No. WD 45593, slip op. at 11, 1993 WL 112075 (Mo.App., W.D., Mar. 2, 1993). Language invokes due process

4. Provisions substantially similar to § 217.690.4, RSMo Supp.1984 (amended 1989), are now found in § 217.690.3, RSMo Supp.1992. We parenthetically note that those statutes in effect when Fults committed his crimes provided him with fair notice of the Board's legislative author-

ity to make and modify parole rules. *Cf. Dufresne,* 744 F.2d at 1548. Providing fair notice fulfills an important function of the ex post facto prohibition. *Weaver,* 450 U.S. at 28–29, 101 S.Ct. at 963–964; *Dufresne,* 744 F.2d at 1546.

protection when it justifies the legitimate expectation that if the stated criteria are satisfied, the prisoner will be entitled to parole. *Cooper*, slip op. at 11. Use of mandatory language ("shall") creates a legitimate expectation that parole will be granted when designated conditions occur. *Board of Pardons v. Allen*, 482 U.S. 369, 377–78, 107 S.Ct. 2415, 2420–21, 96 L.Ed.2d 303 (1987).

 Here, Fults' due process claim lacks merit. We have determined that § 217.-690.1 [5], which was in effect at the time of Fults' crimes, creates no protected liberty interest in parole release for due process purposes because the statute uses discretionary language, "the board *may in its discretion* release or parole." *Cooper*, slip op. at 12. Further, we find nothing in § 217.690.1 that guarantees parole eligibility.

Our analysis of the 1982 guidelines reveals no language sufficient to create a protected liberty interest. Throughout the 1982 guidelines, the Board expresses its authority in discretionary terms. In discussing minimum parole eligibility, the 1982 guidelines provide that "[i]nmates with consecutive sentences *may be eligible* for parole upon completion of twenty-five per cent of the total sentences." MBPP–259 § 4E (7–82). Such language fails to create a liberty interest in a minimum parole eligibility date. *Watley v. Missouri Bd. of Probation & Parole*, No. WD 45913, slip op. at 4–5, 1992 WL 348973 (Mo.App., W.D., Dec. 1, 1992). Under the 1982 guidelines, the salient factor score serves as merely an aid in determining release; it does not determine parole or mandate a presumptive release date. *Cooper*, slip op. at 15; MBPP–259 § 14C (7–82). The Board retains authority to revise its guidelines at any time deemed appropriate. MBPP–259 § 14D (7–82).

Under the discretionary terms of § 217.-690.1 and the 1982 parole guidelines, Fults, as a prisoner, has no legitimate basis to expect application of a particular version of parole guidelines, to expect constancy in the parole guidelines, or to expect a specific parole eligibility date. Therefore, in granting summary judgment in the Board's favor, the trial court appropriately determined that Fults had no liberty interest in the 1982 guidelines.

We accordingly affirm the summary judgment.

---

5. The former statute, § 549.261, RSMo 1978 (repealed 1982), which is not applicable here, created by use of mandatory language a protected liberty interest in parole release for due process purposes. *Cooper*, slip op. at 11; *Maggard v. Wyrick*, 800 F.2d 195, 197 n. 2 (8th Cir.1986), *cert. denied*, 479 U.S. 1068, 107 S.Ct. 958, 93 L.Ed.2d 1006 (1987).