

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| LAWRENCE G. BELK, | ) | |
| | ) | |
| Appellant, | ) | WD86497 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| MISSOURI DEPARTMENT OF CORRECTIONS, ET AL., | ) | April 30, 2024 |
| | ) | |
| Respondents. | ) | |
| | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**Honorable Christopher Kirby Limbaugh, Judge**

**Before Division Four: Gary D. Witt, Chief Judge Presiding,**
**Karen King Mitchell, Judge, and Janet Sutton, Judge**

Lawrence Belk (Belk) appeals the Cole County Circuit Court's (circuit court) judgment granting the Missouri Department of Corrections Board of Probation and Parole's (the Department) motion for judgment on the pleadings. On appeal, Belk argues the circuit court erred in denying his petition for declaratory judgment because Belk alleged facts entitling him to relief. Belk argues the circuit court wrongly interpreted how the armed criminal action statute, section 571.015, interacts with the definition of "dangerous felony" under section 556.061 and the mandatory minimum parole eligibility statute, section 558.019, thereby violating the U.S. and Missouri Constitutional prohibitions on ex post facto laws. Further, Belk argues the circuit court

erred in concluding that Belk has no liberty interest in his parole eligibility.  We affirm the circuit court's judgment, as modified.

## Factual and Procedural Background[1]

The following facts are taken from Belk's initial petition for declaratory judgment and the exhibits attached to that petition filed with the circuit court and supplemented, as necessary, by the briefs filed in this Court.

Belk is currently incarcerated at the South Central Correctional Center in Licking, Missouri.  On December 1, 1994, a St. Louis County jury found Belk guilty of one count of first-degree burglary, one count of kidnapping, one count of rape, two counts of sodomy, one count of first-degree sexual abuse, one count of first-degree robbery, and seven counts of armed criminal action for events that took place on December 23, 1992.  On January 3, 1995, the trial court sentenced Belk as a prior, persistent, and class X offender under section 558.019.  Belk received eleven consecutive terms of life imprisonment, two consecutive terms of thirty years' imprisonment, and one consecutive term of twenty years' imprisonment.

On January 5, 1995, Belk was delivered to the Department and, soon after, was scheduled for a mandatory minimum parole hearing consideration date of December 2047.  In 2007, in the wake of this Court's decisions in *Johnson v. Missouri Department of Corrections*, 166 S.W.3d 110 (Mo. App. W.D. 2005) and *Talley v. Missouri Department of Corrections*, 210 S.W.3d 212 (Mo. App. W.D. 2006), the Department removed the requirement that Belk serve at least eighty percent of each of his life sentences for his seven armed criminal action convictions.  The

---

[1]  Because Belk "appeals from the grant of judgment on the pleadings, the underlying facts are derived from his petition; we assume those facts to be true for purposes of our review." *Bernhardt v. McCarthy for Bd. of Prob. & Parole*, 467 S.W.3d 348, 349 n.1 (Mo. App. W.D. 2015).

Department continued to use the December 2047 date until October 26, 2021.  On October 26, the Department recalculated Belk's mandatory minimum parole consideration hearing date, moving it to December 2065.

Belk protested this additional eighteen years first through an informal resolution request in December 2021, and then in April 2022 through an offender grievance appeal within the Department.  In May 2022, the Department reviewed and denied Belk's offender grievance appeal, stating, "Offender Grievance matters concerning Probation and Parole are non-grievable" and the Department found no policy and procedure violation.

In August 2022, Belk filed a petition for declaratory judgment with the circuit court.  In his petition, Belk asked the circuit court to: (1) declare the Department "violated the general rule of retroactivity that turns on the issue of fundamental fairness" and the Ex Post Facto Clauses of the Missouri and U.S. Constitutions; (2) order the Department to "use the guidelines governing parole eligibility in place when Belk . . . committed the offense(s);" (3) order the Department to pay his litigation costs and filing fees; and (4) appoint Belk a public defender in this case.

The Department filed its answer on October 11, 2022, and, that same day, also filed a motion for judgment on the pleadings, arguing, "Belk's ex post facto argument fails as a matter of law, and he has no statutory right to earlier parole eligibility," thus, the circuit court should grant the Department's motion for judgment on the pleadings and deny Belk's petition for declaratory judgment.  Ten days later, on October 21, Belk responded to the Department's motion for judgment on the pleadings.

In June 2023, the circuit court entered judgment in the Department's favor, granting the Department's motion for judgment on the pleadings, and denying Belk's petition for declaratory judgment.  The circuit court held that Belk's claim failed "because no law has been retroactively

applied to him." Further, the circuit court stated that Belk had "no right to enforce the Board's earlier interpretation where Missouri law requires otherwise," because Belk "has no liberty interest in early release" and "no constitutional or statutory right to parole." Significantly, the circuit court held, "Even if the [Department] failed to follow its own rules or regulations in determining [Belk's] release date, that would not violate due process or give Belk any right to relief," and cited to *Blackburn v. Missouri Board of Probation & Parole*, 83 S.W.3d 585, 587 (Mo. App. W.D. 2002) in support.

Before continuing with the merits of Belk's appeal, we address a persistent confusion about who is the Respondent in this case. In his initial petition for declaratory judgment, Belk only named the "Missouri Department of Corrections, Division of Probation & Parole" in his caption, and alleged in the body of his petition that the Department was the Respondent. In September, the circuit court issued a summons to the Department, listing Julie Kempker (Kempker) as the agent to accept service on its behalf as the Director of the Division of Probation and Parole.

When the Department filed its answer and motion for judgment on the pleadings in October 2022, the Department wrongly captioned both filings as "Missouri Department of Corrections, et al." In both its answer and motion, the Department stated the "Respondents" included the Missouri Department of Corrections, the Division of Probation and Parole, and Julie Kempker. In its answer, the Department specifically stated, "Respondents also note that this Court has captioned Julie Kempker, the Director of the Division of Probation and Parole, as a Respondent." The Department was incorrect.

Likewise, the circuit court captioned its judgment "Missouri Department of Corrections, et al.," but referred to the singular "Respondent." This confusion persisted through Belk's filing

4

of his notice on appeal, where he only listed Julie Kempker as the Respondent, and in both Belk's brief and the Department's brief before our Court, where both parties list the Respondent as the "Missouri Department of Corrections, et al."

Julie Kempker was never added as a party to the initial petition, nor was she properly added to the action, in either her individual or official capacity. "In order to be a party, a person 'must either be named as a party in the original pleadings, or be later added as a party by appropriate trial court orders.'" *Henson v. Merob Logistics, LLC*, 670 S.W.3d 142, 150 (Mo. App. W.D. 2023) (quoting *F.W. Disposal S., LLC v. St. Louis Cnty. Council*, 266 S.W.3d 334, 338 (Mo. App. E.D. 2008)). Kempker was not named in the original pleadings nor was Kempker added by court order. Kempker was named in the summons to simply accept service on the Department's behalf. Therefore, Kempker was not a proper party to the case. Whether Kempker should have been named as a party or had a right to become one, we do not decide. Further, we do not separate the Department of Corrections from the Division of Probation and Parole, but consider it one entity as listed in the initial petition. This in no way affects our analysis of the appeal.

Belk appeals. Additional facts necessary to the disposition of the case are included below as we address Belk's point on appeal.

## Standard of Review

"This Court reviews a circuit court's ruling on a motion for judgment on the pleadings *de novo*." *Dunn v. Mo. Dep't of Corr.*, 645 S.W.3d 565, 568–69 (Mo. App. W.D. 2022). "In reviewing a judgment on the pleadings for a defendant, the plaintiff's 'pleadings are liberally construed and all alleged facts are accepted as true and construed in a light most favorable to the pleader.'" *Hickerson v. Mo. Bd. of Prob. & Parole*, 475 S.W.3d 204, 206 (Mo. App. W.D. 2015)

5

(quoting *Anderson v. Crawford*, 309 S.W.3d 863, 866 (Mo. App. W.D. 2010)). "The moving

party admits, for the purposes of the motion, the truth of well-pleaded facts in the opposing

party's pleadings." *Id.* "[A] motion for judgment on the pleadings should be sustained if, from

the face of the pleadings, the moving party is entitled to judgment as a matter of law." *Dunn*,

645 S.W.3d at 569 (quoting *Woods v. Mo. Dep't of Corr.*, 595 S.W.3d 504, 505 (Mo. banc

2020)).

## Legal Analysis

In his sole point relied on, Belk argues:

> The [c]ircuit [c]ourt erred in denying [Belk's] [p]etition for [d]eclaratory [j]udgment, because [Belk] alleged facts not conclusively refuted by the record entitling him to relief, in that, the retroactive changes in the law regarding the armed criminal action statute § 571.015 and its new relationship to statutes § 556.061 and § 558.019, that changed after February 2007, which in this case violated the general rule of retroactivity and/or the ex post facto clause of the United States Constitution, Article I, §§ 9 and 10 and the Missouri Constitution, Article I, § 13, in that, the motion court's denial was on an incorrect misinterpretation of § 217.690.5 after 2007, with no forethought to the repeat offender statute and dangerous felony statute that was in effect at the time the alleged offenses were committed. The court's conclusion that [Belk] is not entitled to relief because he has no liberty interest in parole eligibility is also in error, because § 558.019.2(3) and § 558.019.4(5) declare substantive rights under existing law before 2007, which entitles class X offenders to serve eighty percent of their time and consecutive sentences that are committed at or near the same time that are over seventy[-]five years shall be calculated to be seventy[-]five years, which makes the December 2047 parole consideration date the correct date and not December 2065.

Belk's point relied on does not comply with Rule 84.04's formula for points relied on and

Belk's point is impermissibly multifarious.[2] "Rule 84.04 plainly sets forth the required contents

of briefs filed in all appellate courts" and its requirements are mandatory. *Lexow v. Boeing Co.*,

---

[2] All rule references are to the Missouri Supreme Court Rules and all statutory references are to the Revised Statutes of Missouri.

643 S.W.3d 501, 505 (Mo. banc 2022). Rule 84.04(d)(2)[3] "provides a simple template for an appellant to follow to ensure compliance with the rule[.]" *Id.* Further, "Rule 84.04(d) also requires separate points to challenge separate rulings or actions" and consolidating multiple, independent claims in a single point is multifarious and not permitted." *Id.* at 505–06. We may, however, exercise our discretion and "review noncompliant points gratuitously, overlooking the technical deficiencies in the points relied on, when the deficiencies do not impede review on the merits." *Id.* at 508. *Pro se* litigants are "held to the same standard as attorneys" and are "subject to Rule 84.04's mandatory appellate briefing requirements." *R.M. v. King*, 671 S.W.3d 394, 397 (Mo. App. W.D. 2023).

Belk's point relied on does not follow 84.04's formula and Belk raises at least two separate arguments in his sole point. Nonetheless, because we can discern Belk's argument, we exercise our discretion and review Belk's appeal on the merits.

Belk argues on appeal that the circuit court erred in denying his petition for declaratory relief. First, as best we can discern, Belk argues the Department erroneously recalculated his minimum parole eligibility date by applying *Johnson* and *Talley* to separate Belk's armed criminal action sentences from his remaining sentences in order to recalculate his minimum parole eligibility. *Johnson v. Missouri Department of Corrections*, 166 S.W.3d 110 (Mo. App. W.D. 2005); *Talley v. Missouri Department of Corrections*, 210 S.W.3d 212 (Mo. App. W.D. 2006).[4] Second, Belk argues that the Department erred in recalculating his minimum parole

---

[3] Rule 84.04(d)(2) requires a point relied on to be substantially in the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

[4] As discussed later in this opinion, *Johnson* and *Talley* held that section 558.019 does not apply to armed criminal action convictions and courts should instead use section 571.015 to calculate

7

eligibility date by applying the *Edger v. Missouri Board of Probation & Parole*, 307 S.W.3d 718 (Mo. App. W.D. 2010) holding.[5] He contends the Department wrongly stacked the minimum parole eligibility terms for Belk's armed criminal action sentence under section 571.015 and the minimum parole eligibility terms for Belk's remaining sentences under section 558.019.

Because of this alleged erroneous calculation, Belk argues the Department misinterpreted the retroactive changes in the law and thereby violated the Ex Post Facto Clauses of the U.S. and Missouri Constitutions. Finally, Belk also argues the circuit court erred in declaring Belk has no liberty interest in parole eligibility. We disagree, and find the Department correctly applied *Johnson*, *Talley*, and *Edger* in recalculating Belk's minimum parole eligibility date under sections 571.015 and 558.019.

In his brief to this Court, Belk argues:

> Both *Johnson* and *Talley* addressed the relationship between the mandatory minimum prison terms specified for certain recidivist offender[s] in § 558.019 and the three-year minimum prison term established by § 571.015.1. Both of these cases changed the judicial jurisprudence of years of misapplication of law, and in this case the new change in the law retarded [Belk]'s sentence affecting his mandatory minimum parole hearing consideration date by adding an additional eighteen years to the date of December 2047.

Further, Belk argues "that all his multiple consecutive sentences, applied the law as it stood prior to 1994 when armed criminal action was classified as a 'dangerous felony' under § 556.061.8" and, therefore, his armed criminal action sentences should have been "subject to the

---

mandatory minimums for such convictions. *Johnson*, 166 S.W.3d at 113; *Talley*, 210 S.W.3d at 216; *Mozee v. Mo. Bd. of Prob. & Parole*, 401 S.W.3d at 505 (Mo. App. W.D. 2013).

[5] Also as discussed later in this opinion, *Edger* held that, for an inmate serving consecutive sentences, the Department must add the minimum terms for each individual sentence to calculate the inmate's parole eligibility date. *Edger v. Missouri Board of Probation & Parole*, 307 S.W.3d 718 (Mo. App. W.D. 2010); *Mozee*, 401 S.W.3d at 502 n.2.

general mandatory minimum prison terms of both § 558.019.2(3)[6] and § 558.019.4(5)."[7] Belk contends the Department wrongly modified his sentence "retroactively" to reflect the change in statutory interpretation as addressed in *Johnson* and *Talley*.

Belk is correct in that his minimum parole eligibility date was extended by the statutory interpretations in *Johnson* and *Talley*. But, Belk is incorrect that the Department wrongly applied this statutory interpretation or that the retroactive application of this statutory interpretation violated the Ex Post Facto Clauses of the U.S. and Missouri Constitutions.

Here, *Talley v. Missouri Department of Corrections* is dispositive. In *Talley*, the defendant was convicted in 1992 of one count of first-degree robbery under section 569.020 and one count of armed criminal action under section 571.015. 210 S.W.3d at 213. The defendant was sentenced "as a prior and persistent class X offender, to consecutive prison terms of fifteen years for robbery and twenty-one years for armed criminal action." *Id.* The Department applied the provisions in section 558.019 to *both* sentences and thus required the defendant to serve eighty percent of both sentences before becoming eligible for parole. *Id.* We disagreed with this calculation. *Id.* at 216.

When the defendant in *Talley* was convicted and sentenced before 1994, a notable

---

[6] In 1992, section 558.019.2(3) stated, "If the defendant is a class X offender, the minimum prison term which the defendant must serve shall be eighty percent of his sentence." A class X offender was defined as an offender who has previously pleaded guilty to or been found guilty of three felonies committed at different times. 558.019.4(3). Currently, as amended in 2019, section 558.019.2(3) no longer provides for the designation of a class X offender status, but the provision that an offender who has three or more previous prison commitments be required to serve eighty percent of his or her sentence remains.

[7] In 1992, section 558.019.4(5) read, "Any sentence either alone or in the aggregate with other consecutive sentences for crimes committed at or near the same time which is over seventy-five years shall be calculated to be seventy-five years." Currently, section 558.019.4(2) contains this same provision.

conflict existed in the Missouri statutes that *Johnson* and *Talley* resolved. In 1992, section

571.015.1 read:

> Except as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the department of corrections and human resources for a term of not less than three years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of three calendar years.[8]

*See* § 571.015 (1986); § 571.015 (2020).

Likewise, in 1992, section 556.061, the definitions section, explicitly listed armed

criminal action as a "dangerous felony." § 556.061.8 (1992). This designation of "dangerous

felony" mattered because, in 1992, this also implicated section 558.019.

At the time, section 558.019 included two subsections of note. First, section 558.019.1

stated, in part, "This statute shall not affect those provisions of sections . . . 571.015 RSMo,

which set minimum terms of sentences . . . ." Second, section 558.019.2, stated that "[t]he

---

[8] Section 571.015.1, as made effective in August 2020, now reads:

> Any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the offense of armed criminal action and, upon conviction, shall be punished by imprisonment by the department of corrections for a term of not less than three years and not to exceed fifteen years, unless the person is unlawfully possessing a firearm, in which case the term of imprisonment shall be for a term of not less than five years. The punishment imposed pursuant to this subsection shall be in addition to and consecutive to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release, or suspended imposition or execution of sentence for a period of three calendar years.

provisions of this section shall be applicable only to class A and B felonies committed under the following Missouri laws," including chapter 571, and "dangerous felonies as defined in subdivision (8) of section 556.061, RSMo."[9]  Because armed criminal action simultaneously fell under chapter 571 but was also classified as a "dangerous felony" at the time, it was unclear whether section 571.015 or section 558.019 governed the general minimum prison term that could be applied to an armed criminal action sentence.

Johnson and Talley clarified which statute controlled the general minimum prison term that applied to a sentence for armed criminal action.  As Talley states:

> In Johnson, we determined that the general minimum prison term provisions of [s]ection 558.019 could not be applied to a sentence for armed criminal action, regardless of whether such application would result in an increase or decrease of the minimum time served.  Id. at 112–13.  Based on a statutory analysis of the relevant subsections of [s]ection 558.019 in pari materia, we concluded that the legislature intended to exclude armed criminal action from the general minimum prison term provisions because the armed criminal action statute sets forth it[s] own minimum standards in [s]ection 571.015.  Id. at 113.

210 S.W.3d at 215–16.

In Talley, our Court applied this new statutory interpretation to the defendant's armed criminal action sentence, holding the armed criminal action sentence was exempt from the general minimum prison term provisions of section 558.019.  Id. at 215–16.  Further, Talley clarified that this new statutory interpretation of sections 571.015 and 558.019 would be "retroactively applied" to armed criminal action sentences.  Id. at 216.  Therefore, our Court retroactively applied section 571.015's statutory minimum sentence requirements instead to the defendant's armed criminal action sentence.  Id.

---

[9]  In 1992, section 558.019.2 read, in relevant part, "The provisions of this section shall be applicable to only class A and B felonies committed under the following Missouri laws: chapters 195, 491, 564, 565, 566, 567, 568, 569, 570, 571, 573, 575, RSMo, and dangerous felonies as defined in subdivision (8) of section 556.061, RSMo."

The same 1992 statutory conflict between sections 571.015 and 558.019 present in *Talley* also existed when Belk committed his underlying offenses.[10] Just as we retroactively applied *Johnson*'s statutory interpretation of sections 571.015 and 558.019 to the defendant's armed criminal action minimum parole eligibility in *Talley*, we do likewise in Belk's case.

In 1994, the Missouri Legislature removed armed criminal action from the definition of "dangerous felony" in section 556.061(8), thereby resolving the conflict between sections 571.015 and 558.019. § 556.061(8) (1992); § 556.061 (1994). This statutory amendment solidified *Johnson* and *Talley*'s holdings that "[section] 558.019 does not apply to armed criminal convictions because [sections] 558.019.1 and .2 expressly exclude armed criminal action convictions from the operation of [section] 558.019 . . . ." *Mozee v. Mo. Bd. of Prob. & Parole*, 401 S.W.3d at 505 (Mo. App. W.D. 2013); *Talley*, 210 S.W.3d at 216.[11]

---

[10] In general, "[p]ursuant to [s]ection 1.160 a defendant will be sentenced according to the law in effect at the time the offense was committed . . . ." *Watkins v. State*, 660 S.W.3d 673, 674 n.2 (Mo. App. E.D. 2023) (quoting *Edwards v. State*, 215 S.W.3d 292, 294 (Mo. App. S.D. 2007)).

Belk alleged he committed these offenses in 1992. Thus, as agreed by Belk in his brief to our Court, we use the Revised Statutes of Missouri (RSMo) 1992 as the statutes governing Belk's original convictions. Belk, however, also alleges that section 217.690 was not in effect in December 1992, which is incorrect.

[11] We also note a recent statutory change may influence future interpretation of *Johnson* and *Talley*'s holdings. In 2020, the Missouri Legislature amended section 556.061, adding "armed criminal action" back into the definition of "dangerous felony." § 556.061(19). Section 558.019, meanwhile, continues to include the conflicting subsections as discussed in *Talley*. Section 558.019.1 states, "This statute shall not affect those provisions of . . . section 571.015, which set the minimum terms of sentences . . . ." Section 558.019.3, however, states:

> Other provisions of the law to the contrary notwithstanding, any offender who has been found guilty of a dangerous felony as defined in section 556.061 and is committed to the department of corrections shall be required to serve a minimum prison term of eighty-five percent of the sentence imposed by the court or until the offender attains seventy years of age, and has served at least forty percent of the sentence imposed, whichever occurs first.

The Department also correctly recalculated Belk's minimum parole eligibility date as required by *Edger* and section 217.690. *See Edger*, 307 S.W.3d 720–21; § 217.690 (1992). Section 217.690 constitutes the general parole statute both in 1992 and at present. § 217.690 (1992); § 217.690 (2021). *See Edger*, 307 S.W.3d at 720. Section 217.690 "authorizes the Parole Board to adopt rules regarding parole eligibility and hearings" and "to determine if and when an offender may be released on parole." *Edger*, 307 S.W.3d at 720–21; § 217.690 (2021). The Missouri Legislature explicitly provided in section 217.690.4, now section 217.690.5, "a method for calculating parole eligibility for an offender with consecutive sentences by adding together the minimum terms for parole eligibility for each consecutive sentence." *Id.* at 721. Specifically, in 1992, section 217.690 provided the following formula for calculating the minimum term of parole eligibility for an offender with consecutive sentences:

> When considering parole for an offender with consecutive sentences, the minimum term for eligibility for parole shall be calculated by adding the minimum terms for parole eligibility for each of the consecutive sentences, except the minimum term of parole eligibility shall not exceed the minimum term for parole eligibility for an ordinary life sentence.

§ 217.690.4 (1992). This same provision currently appears in section 217.690.5 (2021). *See Dunn*, 645 S.W.3d at 569. Further, section 217.690.5's plain language "requires that the minimum prison term on each consecutive sentence be added together to reach an aggregate minimum prison term prior to parole eligibility with the limitation that no individual minimum prison term added into the total can itself be greater than the minimum prison term for a life sentence." *Langston v. Mo. Bd. of Prob. & Parole*, 391 S.W.3d 473, 476 (Mo. App. W.D. 2012).

"[T]he plain language of [Section 217.690.4] clearly establishes that the Board has the

---

(Emphasis added). Thus, whether section 571.015 or section 558.019 governs the minimum prison term required for armed criminal action sentences is yet again called into question but the issue is not before us in this appeal.

authority to create eligibility requirements for parole." *Brown v. Mo. Bd. of Prob. & Parole*, 517 S.W.3d 24, 28 (Mo. App. W.D. 2016) (quoting *Anselmo v. Mo. Bd. of Prob. & Parole*, 27 S.W.3d 831, 833 (Mo. App. W.D. 2000)). "Indeed, the provisions of Section 217.690 give the Board 'almost unlimited discretion,'" and includes the Parole Board's "ability to determine when an offender may become eligible for parole." *Id.* (citation omitted).

Further, section 217.690 goes hand-in-hand with 14 CSR 80–2.010 that "sets forth the guidelines under which the Parole Board is to determine the parole eligibility of an offender." *Edger*, 307 S.W.3d at 720; Mo. Code Regs. Ann. tit. 14, § 80–2.010. In 1992 and now, 14 CSR 80–2.010, as outlined in a "purpose" section, "sets forth factors regarding parole eligibility, the purpose and procedures for parole hearings, and the possible results." Mo. Code Regs. Ann. tit. 14, § 80–2.010 (2024). Regardless whether in 1992 or today, 14 CSR 80–2.010 "simply specified the *minimum* amount of time an offender was required to serve before becoming eligible for parole on an armed criminal action conviction; it did not specify the *maximum* period before parole eligibility." *Dunn*, 645 S.W.3d at 571 (referring to a version of 14 CSR 80–2.010 prior to 2008). Thus, "the regulation merely set a floor on an offender's parole eligibility on an armed criminal action sentence[.]" *Id.*

*Edger* interpreted section 217.690 and its application calculating parole eligibility. *Edger*, 307 S.W.3d at 720–21 (interpreting § 217.690.5 RSMo Cum. Supp. 2009). In *Edger*, the defendant was sentenced to concurrent sentences totaling fifteen years and a consecutive eight-year sentence. *Id.* at 719. *See Short v. Mo. Bd. of Prob. & Parole*, 456 S.W.3d 72, 77 (Mo. App. W.D. 2015) (summarizing *Edger*). The Board of Probation and Parole argued that *Edger* was ineligible for parole until after he served the entire prison term portion of his fifteen-year sentence, as set forth in the conditional release statute, plus the minimum parole eligibility term

14

of his eight-year sentence. *Id.* at 721; *Short*, 456 S.W.3d at 77.

We held that "[s]ection 217.690 and 14 CSR 80–2.010 govern the calculation of parole eligibility and not Section 558.011, which governs conditional release." *Short*, 456 S.W.3d at 77 (citing *Edger*, 307 S.W.3d at 721). Therefore, "[w]e directed the Board to calculate Edger's parole eligibility pursuant to [s]ection 217.690.5 by simply adding together the minimum parole eligibility term for the [fifteen]–year sentence, which was three years and nine months under 14 CSR 80–2.010(1)(B), and the minimum parole eligibility term for the eight-year sentence, which was four years under Section 558.019.2(2)." *Id.* (citing *Edger*, 307 S.W.3d at 721). Thus, *Edger* stands for the principle that "for an inmate serving consecutive sentences, the Board must add the minimum terms for each individual sentence to calculate the inmate's parole eligibility date." *Mozee*, 401 S.W.3d at 502 n.2 (citing *Edger*, 307 S.W.3d at 721); § 217.690.5.

Here, section 217.690.4 properly provided the formula for calculating Belk's minimum parole eligibility.[12] *See* § 217.690.4 (1992); *Edger*, 307 S.W.3d at 720. The Department correctly states in its brief that "[a]ll relevant statutes governing Belk's mandatory minimum parole eligibility calculation were in effect at the time he committed these offenses. *See* RSMo § 571.015 (1986); RSMo § 558.019 (1992); RSMo § 217.690 (1992)[.]" Thus, under *Edger* and section 217.690.4, because Belk is serving consecutive sentences, the Department added the minimum terms for parole eligibility for each sentence under sections 571.015 and sections 558.019.

We now examine Belk's parole eligibility date in light of *Johnson* and *Talley*'s interpretation of sections 571.015 and 558.019 and *Edger*'s formula adding consecutive terms.

---

[12] While in his brief, Belk argues the Department "misinterpreted" section 217.690.5, this does not change our analysis because both sections 217.690.4 and 217.690.5 contain identical language. § 217.690.4 (1992); § 217.690.5 (2019). Thus, this error is not dispositive.

We find the Department correctly applied statutory interpretation to recalculate Belk's minimum parole eligibility date because section 217.690 requires the adding of Belk's armed criminal action minimum sentences under section 571.015 on top of the mandatory minimum sentences of Belk's other convictions that use section 558.019 for their calculation. Again, adding the minimum sentences for an armed criminal action conviction under section 571.015 to those minimum sentences under section 558.019, as did the Department here, is not a "new" application of Missouri law as Belk argues. *See Johnson*, 166 S.W.3d 110; *Talley*, 210 S.W.3d at 215–16.

As stated in his initial petition and in the briefs filed in this Court, Belk was convicted in 1995 of kidnapping, rape, first-degree burglary, two counts of sodomy, one count of first-degree sexual abuse, one count of first-degree robbery, and seven counts of armed criminal action for events that took place in December 1992. Altogether, Belk's convictions, except his seven armed criminal action convictions, were subject to the eighty-percent provisions of section 558.019 and combined for a total 280-year sentence[13] for the purposes of parole eligibility.

In 1992, section 558.019.4(5) stated, "Any sentence either alone or in the aggregate with other consecutive sentences for crimes committed at or near the same time which is over seventy-five years shall be calculated to be seventy-five years." Further, because Belk was sentenced as a "class X offender," "the minimum prison term which [Belk] must serve shall be

---

[13] As further detailed in the Department's brief, Belk received consecutive sentences of thirty years for first-degree burglary, thirty years for kidnapping, one life sentence for rape, two life sentences for each count of sodomy, twenty years for first-degree sexual abuse, and one life sentence for robbery, in addition to his seven life sentences for his seven counts of armed criminal action. Thus, excepting his charges of armed criminal action, Belk was to serve eighty years plus four life sentences. Under 1992's section 558.019.4(4), "A sentence of life shall be calculated to be fifty years." Thus, under section 558.019, Belk was sentenced to 280 years' imprisonment.

16

eighty percent of his sentence." § 558.019.2(3). Under 1992's section 558.019, Belk's 280-year aggregate sentence, therefore, was treated as seventy-five years, and Belk was required to serve eighty percent of those seventy-five years. Thus, for all sentences excepting Belk's seven armed criminal action convictions, Belk must serve sixty years before becoming eligible for parole.

As mandated by *Johnson* and *Talley* and required by *Edger* and section 217.690.4's formula, Belk's mandatory minimum sentence for his seven armed criminal action convictions under section 571.015 must be added in addition to the sixty years under section 558.019. For his seven counts of armed criminal action under section 571.015, Belk was sentenced to seven life sentences, one for each count. Because Belk's commission of the seven armed criminal action counts were his first offenses of this nature, 1992's section 571.015.1 applies and requires Belk to serve not less than three years on each count. § 571.015.1 ("No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of three calendar years."). Thus, Belk would need to serve twenty-one years' time *in addition to* the sixty years under section 558.019 before becoming eligible for parole.

We find that under the 1992 statutes, Belk must serve eighty-one years before becoming eligible for parole. We do this knowing that our retroactive application of *Talley*'s statutory interpretation of sections 571.015 and 558.019 increases Belk's mandatory minimum sentence even though both defendants' mandatory minimums in *Johnson* and *Talley* were decreased. *Johnson*, 166 S.W.3d at 113; *Tally*, 210 S.W.3d at 213, 216. But, as we recognized in *Talley*, the general minimum prison term provisions of section 558.019 cannot be applied to an armed criminal action sentence regardless "whether such application results in an increase or decrease of the minimum time served." *Talley*, 210 S.W.3d at 215–16 (citing *Johnson*, 166 S.W.3d at

17

112–13).

Furthermore, we find that the Department did not violate the Ex Post Facto Clauses of the U.S. and Missouri Constitutions because the Department's recalculation did not apply any new law to increase Belk's sentence. "The constitutions of the United States and Missouri forbid *ex post facto* laws." *Miller v. Mitchell*, 25 S.W.3d 658, 663 (Mo. App. W.D. 2000) (quoting *Fults v. Missouri Bd. of Probation and Parole*, 857 S.W.2d 388, 390 (Mo. App. 1993)); U.S. CONST. art. I § 9, cl. 3, and art. I, § 10 cl. 1; Mo. CONST. art. I, § 13. "An ex post facto law is a law that 'provides for punishment for an act that was not punishable when it was committed or that imposes an additional punishment to that in effect at the time the act was committed.'" *State v. Harris*, 414 S.W.3d 447, 449–50 (Mo. banc 2013) (quoting *R.W. v. Sanders*, 168 S.W.3d 65, 68 (Mo. banc 2005)).

We apply a "two-part test" to an ex post facto challenge. *Id.* at 450. "The statute is an ex post facto law if: (1) it applies to conduct completed before the statute's enactment, and (2) it increases the penalty for the crime beyond what the law provided when he acted." *Id.*; *Mitchell*, 25 S.W.3d at 663 ("*Ex post facto* laws are laws which are retrospective and which disadvantage the affected offender 'by altering the definition of criminal conduct or increasing the punishment for the crime[.]'").

> The purposes of the *ex post facto* clauses are to "curtail legislative vindictiveness and provide fair notice of criminal laws and their punishments." *Fults*, 857 S.W.2d at 390 (citing *Weaver v. Graham*, 450 U.S. 24, 28–29, 101 S. Ct. 960, 963–64, 67 L. Ed. 2d 17 (1981)).
>     The prohibition against *ex post facto* laws is "directed to the legislature rather than to other branches of government." *Fults*, 857 S.W.2d at 390. Thus, the *[E]x [P]ost [F]acto* clauses apply to laws enacted by the legislature. *Id.* at 390–91.

*Mitchell*, 25 S.W.3d at 663.

Here, Belk's ex post facto challenge fails both prongs of the two-part test. First, sections

571.015, 558.019, 556.061, and 217.690 all existed and applied when Belk committed the offenses in December 1992. In applying *Talley*, *Johnson*, and *Edger*, the Department did not apply a new or amended portion of a statute nor was Belk punished for an act not yet made criminal under Missouri law. Again, the ex post facto prohibition "is directed to the legislature," not to this Court's interpretations of existing law. *See Mitchell*, 25 S.W.3d at 663. The Department only applied a retroactive *interpretation* of laws already existing at the time of Belk's offense. No new statute was enacted.

Second, Belk's sentence remains unchanged before and after the Department's recalculation. Since all the relevant statutes were in effect at the time Belk committed the offenses, there was no "increase" in Belk's sentence beyond what the law already provided. Thus, the Department did not violate the Ex Post Facto Clauses of the U.S. or Missouri Constitutions.

Additionally, in his point relied on, Belk also argues the circuit court erred in concluding that Belk was not entitled to relief because he has no liberty interest in his parole eligibility. In its brief, the Department argues, "Belk does not have a liberty interest in a miscalculated parole eligibility date" and that, even if he did, the possible liberty interest is "irrelevant" here because Belk did not raise a Due Process violation claim. We agree with the Department.

"An inmate does not have a constitutional or inherent right to parole before the expiration of a valid sentence." *Kelly v. Gammon*, 903 S.W.2d 248, 251 (Mo. App. W.D. 1995); *State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133, 134 (Mo. banc 1995) ("There is no constitutional or inherent right to early release from prison."). A state, however, "may create a 'protected liberty interest in parole through language in statutory or regulatory measures.'" *Kelly*, 903 S.W.2d at 251 (quoting *Fults v. Mo. Bd. of Prob. & Parole*, 857 S.W.2d 388, 392 (Mo. App. W.D. 1993));

19

*Cavallaro*, 908 S.W.2d at 134 ("[A] state's parole statute may create a protected liberty interest in parole."). "A liberty interest is created where the statute or regulation contains 'specific substantive predicates' and 'explicitly mandatory language.'" *Kelly*, 903 S.W.2d at 251 (quoting *Ingrassia v. Purkett*, 985 F.2d 987, 988 (8th Cir. 1993)). Further:

> "Due process protects liberty interests." *Fults v. Mo. Bd. of Prob. & Parole*, 857 S.W.2d 388, 392 (Mo. App. W.D. 1993) (citing U.S. Const. amend XIV, § 1; Mo. Const. art. 1, § 10). A prisoner does not have a protectable "expectation of parole by virtue of the mere existence of a parole system." *Id.* "Nevertheless, a state may create a protected liberty interest in parole" by use of mandatory language, such as "shall," in statutes or regulations, which "creates a legitimate expectation that parole will be granted when designated conditions occur." *Id.* at 392–93. Section 217.690.4 authorizes the Board to adopt rules regarding parole eligibility and hearings, and 14 CSR § 80–2.010 sets forth the guidelines under which the Board is to determine the parole eligibility of an offender. *Edger v. Mo. Bd. of Prob. & Parole*, 307 S.W.3d 718, 720 (Mo. App. W.D. 2010). Section 217.690.1 "creates no justifiable expectation of release, giving the Board 'almost unlimited discretion' in whether to grant parole release." *State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133, 135 (Mo. banc 1995) (quoting *Ingrassia v. Purkett*, 985 F.2d 987, 988 (8th Cir. 1993)). Section 217.690.1 "creates no protected liberty interest in parole release for due process purposes because the statute uses discretionary language, 'the board *may in its discretion* release or parole.'" *Fults*, 857 S.W.2d at 393. Similarly, the regulations promulgated under the authority of section 217.690 do not create a liberty interest in parole. *Kaczynski v. Mo. Bd. of Prob. & Parole*, 349 S.W.3d 354, 357 (Mo. App. W.D. 2011).

*Miller v. Mo. Dept. of Corr.*, 436 S.W.3d 692, 699 (Mo. App. W.D. 2014). Additionally:

> [T]he mere setting of a presumptive release date does not create a protectable liberty interest because the Board retains its discretion to modify its decision. *There is no language in the Missouri statutes or rules which requires the Board to adhere to its presumptive release date.* On the contrary, the rules state that [the] Board "may in its discretion" release or parole an inmate.

*Kelly*, 903 S.W.2d at 251 (citing § 217.690.1) (emphasis added).

Belk does not have a protected liberty interest in the 2047 parole eligibility date, which was based on a miscalculation and mis-reading of the relevant statutes. Nothing prevents the Department from correcting an erroneously calculated parole eligibility date. Section 217.690 grants the Department nearly unlimited discretion over whether to grant parole release. Even

after Belk serves the statutory minimum sentence, Belk has no liberty interest in parole release under Missouri law. *See Miller*, 436 S.W.3d at 699.

While the circuit court did not err on the principles of law in granting the Department's motion for judgment on the pleadings, we do find the circuit court erred in its judgment confirming the 2065 date. This error was not readily apparent nor argued by either party to the circuit court. On appeal, the Department admitted that it "mistakenly applied its regulatory 45-year rule in violation of statutes" when it recalculated Belk's parole eligibility date for 2065. The Department has since, while this appeal was pending, modified Belk's parole eligibility date to reflect the proper mandatory minimum calculation of eighty-one years, making December 2073 Belk's correct eligibility date under the current state of the law.

We affirm the judgment granting the Department's motion for judgment on the pleadings as modified by the Department's most recent recalculation of his minimum parole eligibility date. "Rule 84.14 permits the appellate court to award or give judgment as the court ought to have given in th[e] situation." *Steinmeyer v. Steinmeyer*, 669 S.W.2d 65, 68 (Mo. App. E.D. 1984); Rule 84.14 ("The appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, in whole or in part, or give such judgment as the court ought to give."). "Consequently, we will exercise our discretion pursuant to Rule 84.14 and modify the circuit court's judgment to 'give such judgment as the court ought to give." *Integra Healthcare, Inc. v. Mo. State Bd. of Mediation*, 655 S.W.3d 604, 617 (Mo. App. W.D. 2022) (citation omitted). Thus, we affirm the circuit court's judgment and modify the judgment only to affirm the current recalculation as to Belk's minimum parole eligibility.

**Conclusion**

As modified, the judgment is affirmed.

_____
Janet Sutton, Judge

Gary D. Witt, C.J., and Karen King Mitchell, J. concur.